Perkins *et al.*, Commissioners for the erection of Public Buildings, *versus* Slack *et al.*, Members of the Select and Common Councils of the City of Philadelphia.

1. The Act of August 5th 1870 constituted certain citizens commissioners for the erection of public buildings in the city of Philadelphia, and after authorizing them to make all needful contracts for the construction of said buildings, enacted that " the said commissioners shall make requisition upon the councils of the city, prior to the first day in December in each year, for the amount of money required by them for the purposes of the commission for the succeeding year, and said councils shall levy a special tax sufficient to raise the amount so required." Sect. 2, art. 15, of the new constitution, which went into operation in January 1874, provides : " No debt shall be contracted or liability incurred, by any municipal commission, except in pursuance of an appropriation previously made therefor by the municipal government." In November 1876, the commissioners made a requisition for $1,500,000 for 1877, which the city councils refused to raise, and the commissioners then applied for a mandamus to compel them to levy a tax for that amount: *Held*, that while sect. 2, art. 15, of the constitution prevented the commissioners after 1874 from making any contract until an appropriation to pay therefor had previously been made, it did not repeal the obligation imposed upon councils to annually raise the amount required by the commissioners, and councils are bound to levy the tax or otherwise raise the amount.

2. Sect. 20, art. 3, of the new constitution, providing that the legislature shall not delegate to any special commission any power to interfere with any municipal improvement, is prospective only and does not apply to special commissions existing before the adoption of the constitution.

February 12th and 13th 1878. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Trunkey, JJ. Woodward, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term 1878, No. 19.

This was a petition for a mandamus, filed by Samuel C. Perkins and others, a majority of the commissioners for the erection of the Public Buildings, in the city of Philadelphia, against Amos M. Slack and others, members of the Select and Common Councils of said city. The petition, in substance, set forth that by Act of Assembly, August 5th 1870, Pamph. L. 1871, p. 1548, certain persons therein named, together with the Mayor of the city of Philadelphia and Presidents of the Select and Common Councils *ex officio*, were constituted commissioners for the erection of public buildings, with power to fill vacancies or increase their number; that the commissioners and their successors proceeded to make contracts for the erection of the buildings, and that a large portion of the said buildings was already constructed, although they were not finished; that by the said act the commissioners were required and authorized to make requisition on the councils, prior to December 1st of each year, for the amount of money required for the succeed-

[Perkins v. Slack.]

ing year, and the councils are by the same act required to levy a special tax sufficient to raise that amount, and that the mayor and all other city officials were required to aid in the execution of all that the commissioners might require; that, in accordance with the act, the relators, on November 29th, made due requisition upon the councils for $1,500,000, the amount required for the succeeding year; that the defendants, the members of the Select and Common Councils, refused to levy any tax to raise the amount so required, or to make any appropriation out of the annual tax; concluding with a prayer for an alternative mandamus to levy a special tax to raise the amount required, or show cause why they should not do so.

An alternative mandamus issued, and the return of the respondents, inter alia, set forth:—

1. That the relators were not creditors of respondents, but their mere agents.

2. That under the constitution and the Act of Assembly, the respondents were vested with a discretion in the levying of the taxes.

3. That under the law of the Commonwealth, the respondents have no authority to levy such special tax.

4. That by the constitution, the commissioners are forbidden to contract any debt, or incur any liability, except in pursuance of an appropriation previously made therefor by councils, and that it nowhere appeared that the requisition was to provide for sums due under contracts made prior to the enactment of said prohibition, or that any appropriation whatever was made by councils.

5. That it did not appear when or what contracts were made, or whether the requisition was for money to be paid under contracts then made or only contemplated.

6. That if there were any contracts binding on the city, there was a full and adequate remedy at law for their enforcement.

To this return the relator demurred, and the court, Biddle, J., refused the prayer for the mandamus and entered judgment for the respondents on the demurrer. In an opinion filed, after a reference to the cases of City v. Fox et al., 14 P. F. Smith 183, and The City of Philadelphia v. Field, 8 Id. 320, the court, inter alia, said:—

" In the year 1870, the legislature passed the act whose provisions are now in question, ' To provide for the erection of all public buildings required to accommodate the courts, for all the municipal purposes within the city of Philadelphia, &c.' By this act the legislature decided that we must have new public buildings. They then selected certain citizens by name, whom they entitled, ' Commissioners for the Erection of Public Buildings.' This body they made perpetual by authorizing them ' to fill any vacancies which may happen by death, resignation or otherwise" And as soon as

[Perkins *v.* Slack.]

the location was determined, they were 'to advertise for proposals, and make all needful contracts for the construction of said buildings as soon thereafter as may be found practicable, which contracts shall be valid and binding in law upon the city and upon the contractors, when approved by a majority of the said board of commissioners; and the said commissioners shall make a requisition on the councils of said city, prior to the first day of December in each year, for the amount of money required by them for the purposes of the commission for the succeeding year, and said councils shall levy a special tax sufficient to raise the amount so required; provided, that said councils may at any time make appropriations out of the annual tax in aid of the purposes of this act.' And it is further made 'the duty of the mayor, the city treasurer, and of all other officers of the city, and also the duty of the councils of the city of Philadelphia, to do and perform all such acts in aid and promotion of the purposes of this Act of Assembly as said councils may from time to time require.'

" A body not chosen by the taxpayers, nor removable by them, nor accountable to them, are here authorized to levy upon them any sum of money they may at their discretion require.

"No appeal was taken to the courts to raise the question of the constitutionality of this law, for it was deemed to contain no principle which had not already been ruled upon by the court of highest resort, not only in the cases which we have already referred to, but still more strongly in the City of Philadelphia *v.* Henry, where the question of the erection of public buildings, under the Act of April 2d 1860, was involved. It is not going too far to say, however, that the act tried to the uttermost the law-abiding character of our citizens, and there was a fixed determination among them that, if the organic law authorized such legislation, and deprived them of the protection of the courts, it should no longer exist. This feeling, with other subjects of discontent, found vent here in the demand for a new constitution. A convention was subsequently called, and the result of their labors was our present constitution, which went into effect on the 1st of January 1874.

" The question before us then is, what bearing, if any, have the provisions of this new organic law upon the question presented for our decision ? If they have no bearing, and we are to be guided by the constitution and laws as they existed before their adoption, the petitioners' right to this writ, we think, would be incontrovertible. It is quite clear that there was no power then which could prevent the legislature from conferring on any one named man, and his heirs, all the functions vested in the mayor and councils of Philadelphia. In regard to the erection of new commissions, the constitution speaks with no uncertain sound. By section 20, article 3, it decrees, ' That the General Assembly shall not delegate to any special commission, private corporation or association, any power to

[Perkins v. Slack.]

make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes, or perform any municipal function whatever.'

"While thus protecting the city from legislation of this character, which they evidently condemned, the question must naturally have presented itself how far the convention would modify what already existed, so that they might, during their own lives, relieve the municipality from the evils which they so clearly recognised, and which, for the future, they so carefully guarded against. The result of their deliberations accorded with the conservative spirit with which they approached all existing organizations. By article 15, section 2, it is provided, 'no debt shall be contracted or liability incurred by any municipal commission, except in pursuance of appropriations previously made therefor by the municipal government.' While the application of this provision to the present commission is not denied, it is contended that its only effect is to require the commission, in the future, to wait till the money is actually in hand before they incur any liability; that their power over the councils is still unimpaired. We put, however, no such limited construction upon its great constitutional provision; we regard it, as we believe the makers of the constitution regarded it, as a part of the system which they adopted to relieve the city of what, in section 20, they call 'the power to make, supervise, or interfere with any municipal improvement, property, money or effects.' We believe the purpose was to subordinate these commissioners to those whom the people had chosen to represent them, and whom they considered the legitimate functionaries to carry on the municipal government.

"The objection that councilmen may fail to do their duty by making the proper appropriations, is of no moment. So may the legislature. So may Congress. The case is supposable, of course, and faction may retard or obstruct, but in all human affairs discretion must be lodged somewhere, and the only question is this, is it not safer in the hands of the immediate representatives of the people, than in the many-headed subordinates beneath them? It was this spirit which actuated the convention, and we will not do them the injustice to suppose that, while they provided safeguards for future generations, they were forgetful of their own. We do not believe that when they said 'No debt shall be contracted, or liability incurred, by any municipal commission, except in pursuance of an appropriation previously made therefor by the municipal government,' their only thought was to make their creditors more secure. We believe that it was designed to prevent the contraction of improvident debts, not to make their payment more easy. It would be a novelty to construe an instrument, made to correct existing acknowledged evils, so that they might be prolonged as long as possible, or to suppose that past legislation has any sacredness which

5 NORRIS—18

requires that the provisions of a new constitution must be construed to conform to it.   The existing organic provision, repealing every-thing inconsistent with it, is the law .of this commission, and while its existence may not be destroyed, nor its former contracts im-paired, from January 1st 1874, it could neither make a contract nor incur a liability without the approval of councils, as evinced by their previously making an appropriation therefor.   As it devolves on councils first to make the appropriations, it is within their dis-cretion to determine when and how they shall be made.   The pro-hibition to the commission to incur no liability 'except in pursu-ance of an appropriation previously made therefor by the municipal government,' means, as we understand it, that after councils shall have decided upon the amount to be appropriated, and have fixed the time of payment, the commission can, 'in pursuance' thereof, or in conformity therewith, make their contracts and expenditures.

"While formerly the commission were authorized to make a requi-sition and enforce it, they are now forbidden to do anything except to present their estimates, like the *other* departments of the city, and when an appropriation is made, to act in pursuance of its pro-visions.

"Holding, therefore, that the discretionary power is now vested in the councils of Philadelphia, in regard to levying these taxes, which we have no authority to coerce, the prayer for a mandamus is refused."

The refusal of the prayer for the mandamus, and the entering of judgment for respondents on the demurrer, were the errors assigned by the relators, who took this writ.

*George Biddle* and *George W. Biddle*, for plaintiffs in error.— Prior to the adoption of the present constitution the legislature had the power to create the Building Commission and invest it with the powers conferred by the Act of 1870 :  City of Philadelphia *v.* Fox, 14 P. F. Smith 169 ;  South Street Bridge Case, City of Phila-delphia, *v.* Field, 8 Id. 320.   This court has decided that the operation of article 3, section 20, of the new constitution, was intended to be prospective only, and does not apply to existing commissions :  Lehigh Iron Co. *v.* Supervisors of Lower Macungie Township, 31 P. F. Smith 482 ;  Indiana County *v.* Indiana County Agricultural Society, 4 Norris 357.   There is nothing in the new constitution which limits the power of the legislature to require municipalities to perform any functions towards their citizens which the legislature deems proper to impose, provided *this power is ex-*ercised only by general laws.   In 1870 it was equally competent for the legislature by a special law to exercise such power ; and we have seen that such exercise of legislative authority, prior to the adoption of the present constitution, is not repealed by the latter instrument.   The conclusion, therefore, is that the obligation im-

posed by the Act of 1870 is valid and subsisting. It is contended, however, that a more extended sense is to be given to the language of section 2 of article 15 of the constitution, and that it was intended not only that no city department should incur debts and so bind the city, without a previous appropriation, but that all legislative control over cities should be taken away; that no obligation which involved expenditure could any longer be imposed upon a city, because it could not be carried out by the proper department, "except in pursuance of an appropriation previously made therefor by the municipal government." To concede this, it must be admitted that the municipal government has the sole discretion as to appropriating, independent of any control of the state, and yet what is to prevent the legislature from compelling a municipality to perform any function for which the state has chartered it, by first requiring the city to make the necessary appropriation, and then requiring the department to perform the function ?

The assumption that no municipal government can now be compelled to make the proper appropriations for any municipal function, is wholly at variance with the law as it stood prior to 1874; and it is not contended that any other part of the present constitution, except the section now under consideration, warrants it. The meaning and purpose of this section will best be understood by reading it in connection with the other provisoes in the constitution affecting cities.

These provisoes guarded cities from improvidently running into debt without at the time providing for the means of payment. All illegitimate expenditures, not properly part of the city government, were cut off. No debt could be created unless a sinking fund was likewise created to meet it, and a limit was put to the indefinite increase of debt. It had been found, however, that cities might run into debt indirectly, by the various municipal departments or commissions, without which a corporation cannot act, running into debt for supplies or other purposes, and then saddling the debt on the city, which had had no opportunity of directly voting on the subject. The constitution, while it had, by section 20 of article 3, forbidden, in the future, the creation of any *special* commission, left the legislature free to continue already existing commissions, *e. g.,* the Water Department, Board of Gas Trustees, Park Commission, &c., or, by general legislation, to create new ones, such as a Board of Health, Board of School Controllers, &c.

To prevent these agents of municipalities thus incurring debts, without a previous appropriation therefor by the municipal government itself, various Acts of Assembly had been already passed. But it was deemed important to make this principle apply to all municipal bodies by incorporating it into the fundamental law of the state. Hence the proviso in section 2 of article 15. The former state of the law, the abuse to be remedied and the new pro-

[Perkins *v.* Slack.]

viso intended to remedy it, when examined together, show precisely the meaning and extent of the language of the latter. It is a rule of action to be observed by municipal departments and commissions when acting as agents for the city government.

It is not a new rule as to many of the large cities of the state; almost the same language has been used before and construed by this court. There is no reason for supposing that the convention used it in any new or different sense.

To hold, as the court below has done, that by this language the convention intended to take away from the state all legislative control over its own municipalities, is to repeal every act heretofore enacted imposing a duty or burthen upon any city, county or borough, whether to build new public county buildings, as in Commonwealth *v.* Marshall, 3 W. N. C. 182; or new city public buildings, as here; or to make appropriations for the conservation of the public health. Many sections in the Municipal Corporations Act of 1874, if this view be correct, are unconstitutional, and all power of the state government to compel municipal bodies to make appropriations to construct necessary public works, or to pay for the proper administration of their various functions, has gone.

*C. E. Morgan, Jr.*, Assistant City Solicitor, *J. Howard Gendell*, Assistant City Solicitor, *William Nelson West*, City Solicitor, and *E. Spencer Miller*, for defendants in error.—We contend that section second of article 15 of the new constitution is applicable and operative; that modifying the Act of 1870, organizing this commission, and restricting the commission organized under it, this clause took effect to prevent their making any new contract without first obtaining from councils an appropriation sufficient to meet it. The meaning and result of this section is, that not only against the commissions which now exist, but against the legislature itself, cities shall control their own expenses, and that such a case as that of the South Street Bridge shall hereafter be impossible.

It is this result of the act which his honor, Judge Thayer, supports and carries out in the case of The Park Commissioners *v.* The City, 2 W. N. C. 126, and which his honor, Judge Biddle, disregarding all minor points, so earnestly contends for in his opinion in this case.

The relators do not allege that such a commission has vested rights protected by the constitution. It is a mere arm or instrument of the government. The legislature might at any time have repealed the act, or modified the powers and duties of the commissioners: Commonwealth *v.* Thompson, 3 W. N. C. 196. They might have made the city superior to the commission. *A fortiori* could the people do it in convention? and this is what they have done. The power of the city to limit its own expenditures is now established.

[Perkins *v.* Slack.]

The constitution also contains a clause, the object of which is to prevent the establishment of future commissions. Knowing that, as in this case, existing commissions might have made contracts which rendered it dangerous to destroy them indiscriminately, those already created were left to stand, but this limit was put to their power :- they could not spend money without the consent of the city.

What words could have expressed their idea more positively and clearly than those used? They do not give the power or duty of appropriating to the commission; they gave it to the city. It is meant as a check on the commission, or it means nothing. If it is to be a check on the commission, the city must have a discretion, and this discretion may obstruct or arrest the progress of the commission. This is all that we contend for.

The object of this clause, say the counsel for the relators, was to prevent the city from running into debt to pay for this improvement. But how could it have this effect if their construction is sound? If the legislature can force a city to build, and force it to make appropriations and contracts for the purpose, what good is attained?

The word "appropriation" does not refer to the source from which the subject of the appropriation is to come, but the object to which it is to be dedicated, and means that until councils have first designated by an appropriation what shall be done no debt shall be contracted.

[Chief Justice AGNEW.—In your opinion, is the 15th article *ipso facto* a repeal of that clause of the Act of 1870, which makes it the duty of councils to levy a tax or make an appropriation?]

It modifies it, but we do not contend goes so far as to work its repeal.

[Chief Justice AGNEW.—Do you not think councils were bound to appropriate under this Act of 1870, before the adoption of the new constitution?]

I do.

[Chief Justice AGNEW.—Then does not the constitution repeal the Act of 1870?]

We do not think our case requires us to go that far.

Mr. Justice TRUNKEY delivered the opinion of the court, March 11th 1878.

On every hand it is admitted that the Act of Assembly of August 5th 1870, providing for the erection of public buildings in the city of Philadelphia, is constitutional and is law, except so much as has been repealed by section 2, article 15, of the new constitution. It ought to be as generally conceded that courts have no power to repeal a statute, and that all denunciations of it as a scheme to obtain money from the people, without consent of their immediate

[Perkins *v.* Slack.]

representatives, or as a measure that tries to the uttermost the law-·
abiding character of the citizens, may be properly considered by a
constitutional convention, or the legislature, but not by a tribunal
whose sole duty is to ascertain and say what the law is.   Where
the expression of the lawgiver is clear, even if the object of the
law be odious, no construction can nullify it.   In such case it will
be strictly construed.   To elude a statute by a pretence of respect
for the intention of its makers, and falsely interpret what has no
need of interpretation, is the basest form of its violation.   A sta-
tute can be repealed only by an express provision of a subsequent
law, or by necessary implication.   These and other long-received
rules should not be thrust aside because they are trite.

The Act of 1870 constituted certain citizens, with power to fill
vacancies, commissioners for the erection of public buildings in the
city of Philadelphia, and required them to organize, procure plans,
employ secretary, treasurer, solicitor, architects and assistants, and
do all other acts to carry out the intention of the statute.   The
location of the buildings was to be determined by a vote of the
electors at the general election in October 1870.   Within thirty
days thereafter, the commissioners were to advertise for proposals,
and, soon as practicable, make all needful contracts for the con-
struction of said buildings, which contracts should be valid and
binding upon the city.   "The said commissioners shall make requi-
sition upon the councils of the city, prior to the first day in Decem-
ber in each year, for the amount of money required by them for the
purposes of the commission for the succeeding year, and said coun-
cils shall levy a special tax sufficient to raise the amount so
required."   "Said councils may at any time make appropriations
out of the annual tax in aid of the purposes of this act."   The
amount to be expended by said commissioners is strictly limited to
the sum required to satisfy their contracts for the erection of said
buildings and for the furnishing thereof.   "It shall be the duty
of the mayor, the city controller, city commissioners, and city trea-
surer, and of all other officers of the city, and also the duty of the
councils of the city of Philadelphia, to do and perform all such acts
in aid and promotion of the intent and purpose of this Act of As-
sembly as said commission may from time to time require."   Such
are the terms of the act.

The section of the constitution relied on as abrogating the stat-
ute is, "No debt shall be contracted or liability incurred by any
municipal commission, except in pursuance of an appropriation
previously made therefor by the municipal government."   Obviously
this prevents new contracts until appropriations to pay for them
shall have been made. The commissioners cannot expend money in
excess of the sum appropriated—the indebtedness of the city shall
not be increased beyond the means provided for payment.   To that
extent is the statute modified or repealed.   Necessary implication

[Perkins *v.* Slack.]

can go no farther. There is no positive repugnancy between that section of the constitution and the other provisions of the statute. Saving that all liabilities incurred shall be in pursuance of previous appropriations by the municipal government, the provisions of the constitution and statute can stand together. The commissioners make the requisition for the work, for its execution is theirs ; the councils appropriate the means, and then only can contracts be made to bind the city. Had the act required the municipal government, instead of the commissioners, to erect the buildings, followed by an amendment directing that government to first make appropriations for the work, and contract no liability in excess thereof, no one could understand the amendment as curtailing the powers or duties of the government in any other respect. Equally clear is it that every duty imposed by the Act of 1870, upon the commissioners and upon the councils and officers of the city, continues in full force, excepting the one modification. To read the law is to know that all power and discretion, in the erection of the public buildings, have been intrusted to the commissioners, and the power and duty of making appropriations and raising the money have been imposed upon the councils.

The will of the law-making power appears in plain and distinct expression. Nevertheless, it may be well, for a moment, to consider the context of the constitution and the expressed object of its framers, as bearing on the true meaning of section 2, article 15. Confessedly, section 20, article 3, avoids no law relative to any commission created prior to 1874. The reports of the debates show much discussion of the subject, repeated attempts to amend that section so as to annul all laws creating such commissions, denunciations of various commissions, including the building commission of Philadelphia, and a persistent refusal by the convention to insert a word which would abolish then existing commissions, or limit the powers which had been given them. Section 2, article 15, was little discussed, no one speaking against it. Doubtless its mover and a few others believed it broad enough to throttle all commissions. In itself it is in harmony with other provisions of the constitution relating to municipal indebtedness, and, as already seen, has potency to prevent incurring liabilities in advance of the means provided for payment. Its scope and just bearing must have been understood by the strong majority of the convention which had so steadily rejected amendments, designed to destroy commissions, to section 20, article 3. That majority included able lawyers, who well knew that no statute or part thereof, not positively repugnant, would be repealed by implication. It cannot be inferred the convention intended what, on full discussion, was refused. More easily may it be inferred that an unskilled hand missed its object. When the convention intended a repeal of existing laws, it was done in no ambiguous or uncertain phrase. For instance, article

. [Perkins *v.* Slack.]

3, section 21, forbidding the enacting of acts relating to personal injuries, declares, " such acts now existing are avoided." Section 22, upon another subject, contains an identical clause. Section 2, article 9, declares certain tax laws void, and section 1, article 16, provides that certain charters and grants shall have no validity. Moreover, section 2 of the schedule expressly continues in force all laws not inconsistent with the constitution. Now, as formerly, the legislature have supreme control over all municipal corporations, subject only to expressed constitutional limitations. Formerly, a special law could be made for every city, now the power must be exercised by general laws. Thus additional reason appears that the Act of August 5th 1870 is still valid.

That statute being the law to the parties, the case is not difficult. The learned judge below was of opinion that if that act were not made nugatory by the new constitution, the right of the petitioners to the writ of mandamus would be incontrovertible. In Park Commissioners *v.* The City of Philadelphia, 2 W. N. C. 124, it was said: " That the relators are entitled to this remedy, and that the city councils, and all other municipal officers and agents, are amenable to it in cases where a clearly defined duty is imposed upon them by law, and which duty does not in any way reflect upon the exercise of official discretion, has been often determined, and is too clear to admit of the least doubt." After a careful review of the Acts of Assembly relating to the Park Commissioners, it was said: " None of these laws gives the commissioners authority to make requisitions upon the councils for loans ; on the contrary, there is a plain purpose that the city shall retain control over the subject." There the rule was correctly held, but it distinctly appeared that the law vested the discretion in the city government, and not in the Park Commissioners. The rule was well stated and applied in Commissioners *v.* The City of Philadelphia, 7 Phil. R. 298. The conclusion to be deduced from the authorities is, that where power is given to public officers, either in peremptory or permissive form, whenever the public interest calls for its exercise, they are bound to act. If the power be judicial or discretionary, the court will not control their deliberation or coerce their discretion. They may be ordered to do their duty, but must be left free to act according to the dictates of their own judgment. But when a ministerial act is to be done, a specific duty or act is enjoined, and there is no other specific remedy, performance will be compelled by mandamus.

The petition of the relators sets forth the Act of Assembly ; the organization of the commission and entering upon their duties; the construction of a large portion of the buildings which are unfinished; the requisition upon the councils for $1,500,000, made November 29th 1876, and the neglect and refusal of the councils to levy any tax or make any appropriation, or otherwise aid in promotion of the purposes of said act, as required.

[Perkins *v.* Slack.]

The return of the respondents makes no suggestion that the facts alleged in the petition are untrue. Six assignments of cause against the writ are given, and have been considered. But little more need be said in reference to the points they suggest.

The first avers that the writ cannot issue at the suit of the relators, who are mere agents of the respondents. In this the facts are not as assumed. The commissioners were not appointed by, are not subject to the control of, or dismissal by, and are not required to settle their accounts with, the councils. They have no private interest in the premises which are not in common with other citizens. To them has been committed a public trust which they cannot, if they would, transfer to another body, without legislative action. They entered upon the duties of their office, have made contracts, have expended vast sums of money in construction of a large portion of the buildings, which are, at present, unfinished. The councils have refused an appropriation; the work stops. The duties of the councils are sharply defined in the Act of 1870. While they disobey, the law is inoperative and construction suspended. When the commissioners are thwarted in the performance of their duties, by neglect of councils to perform theirs, they may sue out the writ in the public interest.

The second assignment avers that councils are vested with a discretion in levying taxes and appropriating money; and the third that they have no power to levy a special tax for the expenses of the current year, commencing January 1st 1877. Whatever discretion is given them under other statutes, for other purposes, matters not in reference to their duty under the Act of August 5th 1870. In argument it was urged they had no power to levy a special tax, because it was not done on the first day of December. It is sufficient to say that the presumption is that they refused to do their duty because of a belief that it was permissive and not absolute. Were it possible that they purposely neglected a known duty, the statutory command remained to appropriate the money and raise it by a special tax or out of the annual tax. Mistake or perfidy may delay, but cannot defeat the law. The law remaining, the duty continues and does not expire with the year 1877. The chief object of the law is construction of public buildings, a work suspended by neglect of councils to do a specific act, and that act is still required to be done, and when done suspension ceases.

The last three assignments refer to contracts of the commissioners. Nothing in the statute, as modified by the section in the new constitution, requires, as a precedent condition to the duty of councils to make the appropriations, specific information to be given of contracts made prior to 1874, or of those contemplated which cannot be made except in pursuance of an appropriation.

Upon consideration of the whole case we are impelled to the conclusion that the learned judge erred in refusing the mandamus.

[Perkins *v.* Slack.]

The return shows no cause against it. There is no averment that the sum required is unreasonable and unnecessary for the purposes of the statute, nor of any fraud or abuse of powers by the commissioners.

It may be well to remember that the commissioners are not irresponsible nor outside the pale of the law. Should they abuse their trust, fraudulently incur liabilities, or attempt to charge the city for anything not within the purview of the act, the courts are open for prevention, redress or punishment. The law of the land, which has the means to compel a recalcitrant public officer to do his duty, provides for his restraint when he is proceeding to violate it, and for redress, or his punishment, when he has defrauded the public.

Concerning legislation to vest powers in special commissions, the people have said they will have no more of it; and, at the same time, refused to avoid existing laws giving such powers. The authority that enacts may repeal. But while a statute is in force, no opinion of its wisdom or policy, of any judicial or ministerial officer, or private citizen, will justify or excuse its violation.

> The judgment refusing the writ is reversed, and judgment for the Commonwealth, and peremptory mandamus awarded. The record is ordered to be remitted for the enforcement of this judgment.

PAXSON, J., filed the following dissenting opinion, in which SHARSWOOD, J., concurred :—

Whatever we may think of its wisdom, no one at the present day doubts the legality of the Act of 5th of August 1870, Pamph. L. of 1871, p. 1548, creating the building commission. That question may be considered at rest. It follows that if said act remains in full force and unimpaired, the relators are entitled to their mandamus. But since its passage the fundamental law of the state has been changed, and two provisions introduced therein which seriously affect said act. Section 20 of article 3 of the constitution provides that, " The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes, or perform any municipal function whatever." This command is addressed to the legislature, and speaks for the future only. It was not intended to derogate from the powers granted to special commissions created prior to the adoption of the constitution. Then we have section 2 of article 15, which is as follows: " No debt shall be contracted or liability incurred by any municipal commission, except in pursuance of an appropriation previously made by the municipal government." This section was evidently intended to operate directly upon commissions existing at the time of the adoption of the constitution. Such con-

[Perkins v. Slack.]

struction is apparent from its terms. That it was so intended by the framers of the constitution clearly appears from an examination of the debates of the convention, vol. 6, p. 232–4. Public attention had already been drawn to the fact that irresponsible commissions, imposed upon the city by the legislature, and yet clothed with absolute control over the purse of the city in the prosecution of their work, were repugnant to our whole theory of government. It was known to the convention that the public buildings, at Broad and Market streets, had been projected upon a scale of magnificence better suited for the capitol of an empire than the municipal buildings of a debt-burdened city; and that the time might come when their further prosecution would become an oppression upon the taxpayers too grievous to be born, unless the councils, the immediate representatives of the people, should have a power of control over the amount to be annually expended. The result has fully vindicated the wisdom of the convention. What then is the effect of this section of the constitution upon the Act of 1870 ? I agree that it does not repeal the act. It does not abolish the commission; it permits the erection of the buildings to go on under their direction. Nay, more, I do not think it affects so much of the act as makes it the duty of councils to provide the means for their completion. But I think it equally clear under this section that it is for councils to say to what extent the means shall be supplied, excepting in so far as contracts have been made by the commission prior to the adoption of the constitution. That is to say, no new contract can be made by the commission after the adoption of the constitution until an appropriation to pay therefor shall have been previously made by councils. In other words, the effect is to give the control of the purse to the city, instead of the building commission. It was conceded upon the argument that the constitution has modified the Act of 1870 so far as to prevent the commission entering into any new contract without an appropriation, and that the greater part of the sum demanded was for new work not contracted for prior to the adoption of that instrument. This much is clear. But it was urged that because it is still the duty of councils to make appropriations, they are bound to appropriate any sum the commission may demand. I am unable to see the force of this reasoning. It is admitted the constitution prohibits the making of any new contract without a previous appropriation. True, say the building commission, we cannot make a contract, but we have the right to compel councils to appropriate whatever sum we demand and then we can contract. This view, in my judgment, is in direct conflict with the letter and spirit of section 2 of article 15 of the constitution, and its adoption by this court practically expunges said section from that instrument. For, if it does not apply to existing commissions, it cannot apply at all, as the creation of any such special commission is prohibited for the future. I do not think the

[Perkins *v.* Slack.]

framers of the constitution or the people who adopted it intended a vain thing when they introduced this section.    In view of the importance of this question I deem it my duty to place upon record my respectful but earnest dissent from the judgment of the majority of the court.