Butler Township Appeal.

Argued March 19, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Leo M. Stepanian,* with him *Brydon, Stepanian, O'Brien & Cook,* for appellant.

*Richard L. McCandless,* with him *Coulter, Gilchrist, Dillon & McCandless,* for commission, appellee.

OPINION BY MR. JUSTICE POMEROY, April 28, 1970:

In July, 1965, certain residents of the Sixth Ward of Butler Township petitioned for the creation of a new ward out of and from the present Sixth Ward. The court appointed a three man commission "to look into the propriety of granting the prayer" and to report to the court. The commission filed its report November 15, 1966, which recommended a combination of the Fifth Ward with the Second Ward, thus reducing the number of wards from six to five. The report was confirmed nisi. Exceptions were filed by various parties, including Butler Township, the appellant. After hearing, the court on December 30, 1966, referred the matter back to the commission for consideration and recommendation to the court on the feasibility of "reapportioning the wards" of Butler Township so as to elect all or part of the township commissioners at large. On February 14, 1967, the commissioners filed an amend-

304

ed report which was thereupon confirmed absolutely, the court ordering that Butler Township be divided so that there be five comissioners, all of whom should be elected at large.[1] Following the remand from this Court as noted in the margin, exceptions were filed to the amended report, hearing was had thereon, and a new final order entered on February 6, 1969. By this order of the court the six wards of Butler Township were consolidated into one ward with five commissioners, all of whom are to be elected at large, in accordance with a schedule contained in the order.[2] The order was accompanied by an opinion of the same date, which was supplemented on March 7, 1967. The case is now before us on appeal from the order of consolidation.[3]

In its first opinion in this matter, filed February 24, 1967, the court spelled out its reasons for concluding

[1] On appeal to this Court, the order of February 14, 1967 was vacated and the case remanded with instructions to permit appellant Butler Township to file exceptions to the amended report of the commissioners. Butler Township Case, 428 Pa. 1, 235 A. 2d 596 (1967).

[2] Following the taking by the Township of this appeal from the order of February 6, 1969, the three commissioners petitioned the court below for the appointment of counsel to represent the position of the commission before this Court. The petition was granted, and the Township appealed the appointment. The case was argued October 7, 1969. We dismissed on the ground that the then state of the record presented no justiciable issue. Butler Township Appeal, 435 Pa. 641, 258 A. 2d 325 (1969). The point has been abandoned on the present appeal.

[3] Under Act No. 351, approved December 2, 1968 and effective January 1, 1969, this appeal should have been taken to the Superior Court. In view, however, of the two prior appeals to this Court, the first of which predated Act No. 351, the pendency of these proceedings for almost five years with consequent uncertainty in the conduct of elections and governmental activities in the Township, and the fact that no objection has been made by appellee to our entertaining the appeal, we have concluded that we should not remit to the Superior Court but should now render a decision on the merits.

that the election of comissioners at large, rather than on the basis of division into wards, was the best plan for Butler Township. It found that the conditions that existed when Butler Township was divided into wards more than thirty years ago had changed; that a tremendous increase in population had occurred; that some populated areas originally isolated by topography had become contiguous; and thus that the main basis for the present ward system had been eliminated. He found that "[t]he geographic arrangement and the population concentration make it impossible to continue a ward system that is fair to all areas." In its opinion dated February 6, 1969, the court further concluded that the "at large" plan was the only one that would conform, without question, to the one man—one vote requirement of the Federal Constitution. This was further delineated in the court's supplemental opinion dated March 7, 1969.

There is no challenge to the reasonableness or fairness of this decision, and so we are not obliged to review the demographic and geopolitical factors or the Fourteenth Amendment considerations which form the basis of the court's order. Appellant contends, however, that the court exceeded its authority in making the order, both under The First Class Township Code[4] and under Article IX, Section 11 of the Pennsylvania Constitution.

It is true that the original petition herein merely requested that a new ward be carved out of the existing Sixth Ward, so that the number of wards would be increased by one; the petition did not contemplate consolidation of wards or lessening the total number. We conclude, however, that this is without significance as far as the power of the court below is concerned.

---

[4] Act of June 24, 1931, P. L. 1206, Art. IV, §§401, 402 and 403, as last amended by the Act of August 24, 1963, P. L. 1146, §1; 53 P.S. §§55401, 55402, 55403.

The First Class Township Code provides the machinery and procedure for establishment of wards, and for changes in the ward structure. The power to do this is vested in the Court of Quarter Sessions (now Court of Common Pleas) upon petition of at least 100 freeholders. Upon the filing of a petition, the court must appoint a commission of "three impartial men . . . to inquire into the propriety of granting the prayer of the petitioners" and report to the court. The report of the comissioners is thereupon confirmed nisi, to become absolute unless exceptions are filed within 30 days. The court is not limited, however, to the precise recommendations of the report. If no exceptions are filed to it, the court may either confirm the report "or make such other order as by it shall be deemed proper." If, as here, exceptions are filed, the court after hearing "shall enter such decree as by it shall be deemed just and proper." 53 P.S. §55403.

This procedure was followed in the case at bar. The court's order of February 6, 1969, entered after hearing on the exceptions to the amended report filed February 14, 1967, confirms that report absolutely, with minor procedural modifications.

Prior to the 1963 amendment to Section 401 of The First Class Township Code, there was power in the Court of Quarter Sessions to redivide a township into wards, to divide any wards into two or more wards, to erect any wards out of two or more adjoining wards, and to alter the lines or boundaries of wards. There was, however, no power to consolidate wards, and we so held in *Scott Township Appeal,* 388 Pa. 539, 130 A. 2d 695 (1957). The Act of 1963 expressly provided that, in addition to the foregoing powers, the court could also "consolidate two or more wards into one ward." That is what the court did in this case, i.e., consolidate six wards into one. To hold that the

commission and the court were restricted to granting or refusing the specific relief prayed for by petitioners would be to negate the broad, discretionary power vested in the court "to enter such decree as by it shall be deemed just and proper." While the court has no authority to act in this area unless and until petitioned to do so, once a proper petition under §401 of The First Class Township Code is filed, it is the court's responsibility after being advised by the commissioners to do what it deems just and proper. This could involve division or erection or consolidation of wards, or alteration of boundary lines, or a combination of these measures. We hold that the court here did not exceed its authority under the code.

The other contention of the appellant is that the court acted in contravention of Article IX, Section 11 of the Constitution of Pennsylvania, as amended in 1968. That section requires that a municipality having a governing body not entirely elected at large shall be reapportioned by its governing body within the year following the year in which the Federal decennial census is officially reported, and at such other times as the governing body shall deem necessary.

Whether or not this section is self-executing is a question not argued and which we need not now consider. Assuming that it is, it does not effect an automatic repealer of Section 401 of The First Class Township Code, and similar provisions of other statutes dealing with governmental subdivisions. The restructuring of wards within a municipality, as provided by Section 401, can be desirable and feasible for a number of reasons other than to accomplish reapportionment.[5] Con-

---

[5] We here use the word "reapportion" in the sense used in Article IX, Section 11 of the Constitution, viz., to establish "districts which shall be composed of compact and contiguous territory as nearly equal in population as practicable, for the purpose of de-

ceding, however, that reapportionment may normally be the primary motivation for such changes in wards, we see no inherent incompatibility between the reapportionment by the governing body of a municipality provided by the Constitution and reapportionment through court-ordered ward realignments permitted by The First Class Township Code. The latter method could upon occasion be a useful complement to the former. In any event, it is for the General Assembly to provide by general law for local government within the Commonwealth (Article IX, Section 1 of the Constitution), and if it wishes to modify or repeal Section 401 and similar provisions, it can and presumably will do so.

Yet another reason dictates the nonapplicability of Article IX, Section 11 of the Constitution to the present case. That Article was adopted by the electorate and became effective on April 23, 1968. The case at bar had then been pending for almost three years. We know of no authority under which the new constitutional provision should be held to operate retrospectively to render invalid the proceedings here involved. Both reason and precedent are to the contrary. *Perkins v. Slack*, 86 Pa. 270, 279 (1878), *Lower Macungie Township Annexation Case (No. 1)*, 213 Pa. Superior Ct. 313, 319, 248 A. 2d 58 (1968). We observe, finally, that in a strict and technical sense the lower court, in consolidating wards, did not reapportion the Township, but rendered reapportionment unnecessary in the single ward of which the Township is now comprised. The court's

---

scribing the districts for those not elected at large." This meaning is consonant with the federal constitutional requirement as contained in the Fourteenth Amendment, and which applies to units of local government as well as to state legislatures. See *Avery v. Midland County, Texas*, 390 U.S. 474, 20 L. Ed. 2d 45 (1968); *Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed. 2d 506 (1964).

order accomplished complete compliance with the one man—one vote principle, which is of the essence of an at large election.

Order affirmed.

Mr. Justice ROBERTS concurs in the result.