Board of Commissioners, Springfield Township, Appellant, *v.* Arthur G. Kahn, George A. Kurtz and Alfred J. Simmons, Appellees.

Argued April 3, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Sondra K. Slade,* with her *Kimber E. Vought* and, of counsel, *Schnader, Harrison, Segal & Lewis* and *Crawford & Diamond,* for appellant.

*Francis R. Lord,* with him *Lord & Mulligan,* for appellees.

Opinion by Judge Kramer, May 31, 1974:

This is an appeal filed by the Board of Commissioners of Springfield Township (Township) from an order of the Court of Common Pleas of Delaware County,

dated January 29, 1974, in which the court dismissed the Township's petition (and two other petitions of citizens who did not appeal to this Court) to dismiss a petition of Arthur G. Kahn, George A. Kurtz (also spelled Kutz in the record), and Alfred J. Simmons (collectively referred to as Kahn), praying for the re-division of existing wards of the Township of Springfield, and the creation of additional wards, if necessary.

Although Kahn argued before this Court for a distinction between the creation of the wards and the constitutionally mandated reapportionment of a township, it is clear that the Kahn petition seeks the latter. The petition and the record establish that according to the 1970 census for the Township, the population totaled 29,006 people. The last reapportionment for the Township occurred in 1967. It would appear that there is accord among all of the parties that there is a need for reapportionment to reach compliance with the provisions of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as described in such cases as *Avery v. Midland County, Texas,* 390 U.S. 474 (1968) ; *Reynolds v. Sims,* 377 U.S. 533 (1964) ; *Butcher v. Bloom,* 420 Pa. 305, 216 A. 2d 457 (1966) ; and *Butcher v. Bloom,* 415 Pa. 438, 203 A. 2d 556 (1964). The Township is presently divided into seven wards which are malapportioned. Although the Board of Commissioners of Springfield Township was aware of the 1970 census for the Township, which was officially reported on December 1, 1970, it took no action towards reapportionment until the Kahn petition was filed with the court below on November 13, 1973. It was only after receipt of a copy of the Kahn petition that on that same date, to wit, November 13, 1973, the Board of Commissioners adopted a resolution to study the need for reapportionment. Springfield Township is a township of the first class and has been governed for many years by a seven-man board of com-

missioners, each elected from one of the respective wards.

On the same date that the Kahn petition was filed, the court below granted the prayer of the petition by the appointment of three commissioners who were directed "to inquire into the propriety of granting the requested redivision of the wards of The Township of Springfield and to report to this Court as soon as practicable." On December 4, 1973, the Township petitioned to intervene, and sought to vacate the order and dismiss the Kahn petition. After hearing, the court below filed its opinion and order wherein, in effect, the court held that the Board of Commissioners, not having reapportioned the Township by December 1, 1971, thereby lost the power to reapportion. The court held that Article IX, Section 11 of the Pennsylvania Constitution of 1968 did not operate as a repealer of the redivision provisions of The First Class Township Code, Act of June 24, 1931, P. L. 1206, art. IV, §401, *as amended,* 53 P.S. §55401. The court below also ordered the redivision commission to proceed with its public hearings and the filing of its report on or before March 20, 1974.

After appeal to this Court by the Township, Kahn filed a motion to quash the appeal on the basis that the order dated January 29, 1974, of the court below was interlocutory. After argument, this Court, on March 7, 1974, denied the motion and directed that all further proceedings be stayed, pending further action by this Court.

The specific question presented by the Township is whether Article IX, Section 11 of the Pennsylvania Constitution of 1968 superseded the ward redivision provisions of The First Class Township Code, 53 P.S. §55401 so that the power to reapportion the Township resides solely with the Board of Township Commissioners.

Article IX, Section 11 of the Pennsylvania Constitution of 1968 reads: "Within the year following that in which the Federal decennial census is officially reported as required by Federal law, and at such other times as the governing body of any municipality shall deem necessary, each municipality having a governing body not entirely elected at large shall be reapportioned, by its governing body or as shall otherwise be provided by uniform law, into districts which shall be composed of compact and contiguous territory as nearly equal in population as practicable, for the purposes of describing the districts for those not elected at large." There is no question that the Legislature has not passed any specific implementing legislation in connection with the adoption of this section of Article IX.

Section 401 of The First Class Township Code, 53 P.S. §55401, provides:

"The court of quarter sessions, upon petition, may divide or redivide any township, heretofore or hereafter created, into wards, erect any wards out of two or more adjoining wards, or parts thereof, consolidate two or more wards into one ward, divide any wards already erected into two or more wards, or alter the lines or boundaries of any two or more adjoining wards, and may cause lines or boundaries of wards to be fixed and established. No township shall be divided or redivided into more than fifteen wards.

"No ward shall be created containing less than three hundred registered electors therein, and all wards which now, or at any time hereafter shall, contain less than three hundred and fifty registered electors therein may in the discretion of the court be abolished, and if so abolished, the territory thereof shall be distributed among the remaining wards in such manner as the court of quarter sessions shall direct. All other wards as heretofore established shall remain as heretofore until altered or divided as provided in this article:

"Provided, That if, in townships wherein any ward shall be abolished as herein provided, the number of wards shall be reduced to less than five, then the commissioner in the ward or wards abolished shall continue in office for the term for which elected, and shall become a commissioner or commissioners at large from such township as provided in this act, with respect to townships having less than five wards."

Following the adoption of Section 11 of Article IX, two opinions of the appellate courts in this Commonwealth were handed down which on the surface would appear to be conflicting and on which each of the parties in this matter relies respectively as the basis for their argument. It is this apparent conflict which this Court must resolve in deciding this case on its merits.

The Township relies upon *Lower Merion Township Appeal,* 215 Pa. Superior Ct. 363, 257 A. 2d 264 (1969). In *Lower Merion, supra,* the Superior Court was confronted with the issue of whether Article IX, Section 11 superseded the ward redivision provisions of The First Class Township Code. In that case, a Section 401 commission was appointed after the effective date of the 1968 constitutional amendment. The Township intervened, claiming the right to reapportion itself under the constitutional amendment. Judge WATKINS (now President Judge) in speaking for the court, stated: "Article IX, Section 11 of the Constitution clearly indicates that for the first time the primary responsibility for reapportioning municipalities shall be placed on the governing body of the municipality in which the governing body is not entirely elected at large. This being apparent, the new Constitution would of necessity have to supersede that portion of The First Class Township Code which empowered the court to reapportion such municipalities. . . ." 215 Pa. Superior Ct. at 365, 257 A. 2d at 265. He also stated: "It is the clear intent of the Constitution that reapportionment be a legislative func-

tion and that judicial action should only take place in the event of inordinate delays.

"Though the Constitution places the primary responsibility on the governing body of a municipality, this does not mean the courts of the Commonwealth are powerless to effect reapportionment where the governing body fails to act and the need for reapportionment is clear." 215 Pa. Superior Ct. at 366, 257 A. 2d at 265. These last two sentences are a reiteration of the emphatic teachings of our Supreme Court in both *Butcher v. Bloom* cases cited above.

Kahn relies upon *Butler Township Appeal*, 438 Pa. 302, 264 A. 2d 676 (1970), which was decided a year later. In *Butler, supra,* the Court had before it a petition for creation of a new ward in Butler Township which had been filed in 1965, some three years *before* the constitutional amendment in question. Interestingly enough, the Court did not mention the *Lower Merion* opinion of the year before. The Court did not answer the question of whether or not Article IX, Section 11 was self-executing. The Court pointed out that it knew of no authority under which the new constitutional provision should be held to operate retrospectively to render invalid proceedings which had been before the courts prior to the adoption of the constitutional amendment. In what would appear to be dictum, Justice POMEROY, in *Butler, supra,* noted: "The restructuring of wards within a municipality, as provided by Section 401, can be desirable and feasible for a number of reasons other than to accomplish reapportionment. Conceding, however, that reapportionment may normally be the primary motivation for such changes in wards, we see no inherent incompatibility between the reapportionment by the governing body of a municipality provided by the Constitution, and reapportionment through the court-ordered ward realignments permitted by The First Class Township Code. The latter method

could upon occasion be a useful complement to the former. In any event, it is for the General Assembly to provide by general law for local government within the Commonwealth (Article IX, Section 11 of the Constitution), and if it wishes to modify or repeal Section 401 and similar provisions, it can and presumably will do so." (Footnote omitted.) 438 Pa. at 307-308, 264 A. 2d at 678-679.

It is Kahn's contention that the *Butler* opinion breathes new life into Section 401 and that there was no judicial repealer of Section 401 by way of *Lower Merion, supra.* Thus, the stage was set for this case wherein the Township relies upon the constitutional mandate, and the citizens rely upon Section 401 which has not been specifically repealed by legislation or the courts.

Upon a review of these facts and the contentions of the parties, the question immediately is raised in one's mind on how the constitutional principles of "one man-one vote" can be accomplished with a procrastinating governing body. Can the board of township commissioners, such as in this case, do nothing after the publication of a decennial census? Do the citizens have any recourse for the protection of their constitutional rights? These questions must obviously be resolved.

Although there has been much debate by legal scholars on whether or not the "one man-one vote" principle should be applied to local governmental bodies, the United States Supreme Court has resolved that issue for us in *Avery v. Midland County, supra.* There the Court stated that the constitutional protections of the Fourteenth Amendment are applicable to local governmental bodies. Mr. Justice WHITE, speaking for the majority, stated:

"The Equal Protection Clause reaches the exercise of state power however manifested, whether exercised directly or through subdivisions of the State. . . . The

actions of local government *are* the actions of the State. A city, town, or county may no more deny the equal protection of the laws than it may abridge freedom of speech, establish an official religion, arrest without probable cause, or deny due process of law. (Emphasis in original.) 390 U.S. at 479-480.

". . . The conclusion of Reynolds v. Sims was that bases other than population were not acceptable grounds for distinguishing among citizens when determining the size of districts used to elect members of state legislatures. We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body.

". . . Our decision today is only that the Constitution imposes one ground rule for the development of arrangements of local government: a requirement that units with general governmental powers over an entire geographic area not be apportioned among single-member districts of substantially unequal population." 390 U.S. at 484-486.

Our Supreme Court in *Butcher v. Bloom,* 420 Pa. 305, 308, 216 A. 2d 457, 458 (1966), noted that courts should be reluctant to intrude into an area for which the Legislature has primary responsibility and only should intrude when the legislative body has failed to carry out its constitutional mandate on reapportionment. Keeping these thoughts in mind, together with the firm resolve to give the greater weight and effect to a constitutional mandate over a conflicting prior statutory provision, we hold that it was error for the court below to appoint this Commission and order its continuance under the facts of this case. In doing so, we do not intend to reach a result contrary to the dictum of Justice POMEROY in the *Butler* opinion. We agree that there may be a number of reasons other than

the accomplishment of reapportionment which would permit citizens or the Township to utilize the provisions of Section 401 of The First Class Township Code. However, in those cases where such utilization is clearly for the purpose of reapportionment, such as in this case, we agree with the holding of Judge WATKINS in *Lower Merion, supra,* that Section 401 has been superseded by the constitutional amendment in question. This does not mean that the governing bodies of our local municipalities may procrastinate and thereby deny their citizens their constitutional rights. The courts in this Commonwealth have long held that where there is a clear right in the citizen and a mandatory duty on the part of public officials that an action in mandamus will permit a court to order the performance of such mandated duties. If the public officials would defy a court order resulting from such a mandamus action, there are at least two courses of action to assure the citizens' constitutional rights. The first would be an action to remove such officials from office, and the second would be the power of the courts as announced in both *Butcher v. Bloom* opinions to reapportion within the given guidelines so as to construct districts of as nearly equal population as practicable.

Proof of the soundness of the result in this case may be found in the answers to a very perplexing question. What would happen, or which would take precedence, if both the court-appointed commission and the Board of Township Commissioners proceeded to reapportion Springfield Township and the final results of their studies, findings and conclusions contained major conflicts? As pointed out in *Avery, supra,* reapportionment includes not only a study of statistics on population, but also a determination of districts. This necessarily includes the changing of boundary lines. Therefore, when one attempts to reapportion, one must of necessity consider the changing of the boundaries of wards. One cannot reapportion without this considera-

tion, and therefore it is part and parcel of it. Our reading of the applicable law permits us to conclude that if the Township Commisiosners and the court-appointed commission were to proceed on their respective ways towards reapportioning Springfield Township, we would be bound to recognize the reapportionment of the Township Commissioners. In other words, where the intent and purpose of the citizens petitioning the court under a Section 401 proceeding is obviously for the purpose of reapportionment, and where that proceeding is in conflict with the reapportionment proceedings of the governing body, actions of such a court-appointed commission are a nullity and the court appointing them should dissolve the commission.

The lower court attempted to draw a distinction under the facts of this case between reapportionment and a redivision of wards. While conceding, as we have, that Justice POMEROY's dicta may have some merit under a proper set of circumstances, there is no way we can read the petition in this case to be applicable to anything other than reapportionment. That being the case, we hold that the Township Commissioners must be given the authority to proceed with reapportionment as the record in this case indicates is their desire, and that the commission ordered by the court below must be dissolved. We must reverse the court below, and therefore we

### Order

AND Now, this 31st day of May, 1974, upon consideration of the foregoing opinion, it is ordered that this matter be remanded to the Court of Common Pleas of Delaware County for the purpose of permitting that court to vacate its orders of November 13, 1973, and January 29, 1974, at its Miscellaneous Q.S. Docket No. A-31, page No. 448, December Session 1973, and to dismiss the petition of Arthur G. Kahn, George A. Kurtz (or Kutz) and Alfred J. Simmons.