THE STATE OF DELAWARE, on the relation of Edward Murray, Plaintiff-in-Error, Plaintiff Below, v. JOHN E. RILEY, ROBERT DENNY, WILLARD REESE, FRANCIS MARSDEN, WALTER HELM, CHARLES H. RICHARDS, JR., MATTHEW JUDGE, BENJAMIN BROWN, Directors of the Department of Public Safety of the City of Wilmington, FRANK J. CORSANO, Chairman of Finance Committee of the Council of the City of Wilmington, HARVEY WOOD, Chairman of the Department of Public Safety Committee of the Council of Wilmington of the City of Wilmington, Defendants-in-Error, Defendants Below.

(*December* 16, 1949.)

HARRINGTON, Chancellor, TERRY, CAREY, PEARSON, LAYTON, J. J., and SEITZ, Vice-Chancellor, sitting.

*Stewart Lynch* and *Florence E. Freeman* for plaintiff-in-error, plaintiff below.

*August F. Walz* (of the firm of Hastings, Stockly, Walz and Wise) for defendants-in-error, defendants below.

Supreme Court, No. 2, September Session, 1949.

LAYTON, Judge.

The object of the petition for mandamus was to compel the trustees of the Firemen's Pension Fund to redetermine relator's pension rights as a retired fireman under Chap. 118, Vol. 33 Laws of Delaware.

Relator (Plaintiff-in-error) was a fireman who retired on November 17, 1945. Under the provisions of Chap. 118, Vol. 33 Delaware Laws, as amended, Vol. 35 Laws of Del., c. 88, he became entitled to a pension of "* * * one-half of the amount of his salary at the time of retirement * * *". The question

presented is the amount of relator's actual salary as of his retirement for the purpose of determining his correct pension.

The facts consist of a stipulation and several documents. It appears that relator's monthly salary as of March, 1945 was $193.18 payable twice monthly with two days off each month. By resolution of March 7, 1945, to be effective March 16, the Department of Public Safety determined that firemen would receive three days pay if they worked on their allotted two days off each month. In other words all firemen, including relator, received at that time $19.50 monthly if they worked the two extra days, making their total compensation per month $212.70. A letter from the President of the Department of Public Safety amplifies the resolution of March 7th. It is herewith quoted in full.

"February 28, 1945

"Mr. Harvey Y. Wood,
Chairman of Public Safety Committee
The Mayor and Council
Wilmington, Delaware

"Dear Sir:

"By reason of the shortage of personnel in both Bureaus of Police and Fire, it will be impossible for these Bureaus to function if the present system of allowing two allotted days off each month and fourteen days annual vacation is continued. It is thought that the Bureaus can function and that the annual vacations can be granted if the two allotted days per month are temporarily suspended during the emergency. In order to accomplish this, the Board proposes that the Department of Public Safety pay the members of the Department time and half for the two allotted days, which is the equivalent of three days pay. If this can be accomplished, the Board will cancel temporarily the two allotted days per month and pay the men three days pay in return for their extra services. It also appears that the present payroll accounts in the budgets for each Bureau will be sufficient to provide this

additional pay without any additional appropriation from The Council for this purpose.

"It is to be understood that this measure is of a strictly temporary nature and that the allotted days will be restored as soon as the situation permits and, of course, the additional pay eliminated.

"Very truly yours,

Department of Public Safety

Benjamin N. Brown
President"

"BNB: J"

The then City Solicitor first ruled that the compensation for the extra two days work should be included as "salary" for the purpose of determining pensions. Thereafter, the City Solicitor reversed his ruling. In this connection he stated:

"The law provides that all members of the Police Force who shall participate in the Police Pension Fund shall pay into said fund four percent of the *salaries* of such members. I am now inclined to believe that the amounts paid to employees for working the two extra days a month should not be considered in computing the contribution to the Police Pension Fund nor in establishing the base rate of pay for retiring members. If you adopt this rule it would appear that the four per cent deductions on the amount paid as extra wages should be returned to the employees."

The 4% deductions on relator's extra compensation were returned to him and no further assessments made on his extra compensation.

On July 1, 1945 relator's base salary was increased to $202.57 monthly which, together with $20.25[1] monthly for working the two days off, resulted in total monthly compensation of $222.82 to and including October 30th. For the first two weeks of No-

---

1. The amount of $19.50 for working the two days off per month was also increased to $20.25.

vember, 1945, relator was paid $111.41. He worked November 16th and retired that night. The two extra days for November did not fall in the first two weeks and he accordingly received no extra compensation during that period.

Relator received a pension of $10.29 monthly. The object of this litigation is to have his pension declared to be $111.42 or one-half of his total compensation at the time of his retirement.

Relator's claim to extra pension depends upon whether the compensation of $20.25 monthly for working the two extra days per month represented salary as that term is employed in the statute. In *State ex rel King v. Abbott*, 4 *Terry* 472, 48 *A.2d* 745, 746, Judge Pearson sitting in the Superior Court, defined the word "salary" as it appeared in a very similar Act, State Police Pension Act, to be "* * * 'the recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services, esp. to holders of official, executive, or clerical positions; fixed compensation regularly paid, as by the year, quarter, month, or week'. Webster's New International Dictionary, 2d Ed., p. 2203."

Salary suggests regular compensation at fixed periods without regard to the number of days actually worked so long as the employee is in good standing with his employer. Thus, providing there be no agreement to the contrary, an employee on salary might reasonably expect to receive his regular salary even though he missed an occasional day's work due to illness or otherwise; and compensation paid during vacations incident to the position is ordinarily based upon the salary regularly paid. Traditionally "salary" does not seem to have encompassed situations where additional pay is given for overtime. The phrase "time and half" pay sounds more in terms of special compensation for extra work, rather than a regular rate of compensation.

An examination of the stipulation of facts and other documents constituting the record in this case discloses that the com-

pensation for the two allotted days off for each month is neither regular nor fixed in the sense that a designated amount would be paid regularly whether the hours were actually worked or not. The stipulation discloses also that the compensation of three days pay for the two allotted days off was not received unless the work was actually performed.

We recognize that in construing pension acts, Courts are apt to lean in favor of the pensioner. 3 *Lewis' Sutherland Statutory Construction, 2d Ed.,* § 7209. However, this is no more than a constructional preference to be considered with other guides to interpretation. Compare: *Blaustein v. Standard Oil Co.,* 4 *Terry* 449, 458, 459, 49 *A.2d* 726, 729, 730; *Hutton, Admr. v. Phillips, Receiver of Taxes, (Del. Super),* 70 *A.2d* 5. Here, we think the statutory language connotes a rate of regular, periodic compensation so as to exclude special compensation which is payable only where services are actually rendered for a longer time than the regular working hours of a compensation period. The preference for constructions relatively more beneficial to the pensioner is insufficient to compel a different construction from that which seems indicated by the word "salary" in its context, as tested by traditional and contemporary common usage.

The conclusion we draw from all the circumstances is that the three days pay for the two extra days per month was not salary within the statutory meaning.

The decision of the Superior Court is correct and is affirmed.