Elwood Mellott, Appellant, Plaintiff below, v. Louis F. Carrocci, John F. Headley, Edward F. Horgan, Walter L. Warren, John P. Zebley, Charles W. Lawson, James T. Chandler, Jr., Frank J. Horty, Joseph A. Bruno, Sr. and Frank J. Corsano, Members of and Constituting the Trustees of Firemen's Pension Fund, Appellees, Defendants below.

(*June* 28, 1956.)

Southerland, C. J., and Wolcott and Bramhall, J. J., sitting.

*Samuel Keil* and *Harold Shaffer* for appellant.

*Januar D. Bove, Jr.,* and *William F. Lynch,* II for appellees.

Supreme Court of the State of Delaware, No. 10, 1956.

Wolcott, J.:

This appeal involves the determination of the amount of pension due the appellant, a retired fireman of the City of Wilmington.

The appellant retired on April 6, 1952, under the provisions of 33 *Laws,* Ch. 118, amended by 45 *Laws,* Ch. 168, which provide for the payment to a retiring fireman of a pension in "an amount equal to one-half of the amount of his salary at the time of his retirement."

The appellees, constituting the Board of Trustees of the Firemen's Pension Fund, acknowledge the right of the appellant

to receive a pension. The only dispute between the parties is as to the amount of the pension.

Commencing on March 8, 1932, appellant worked continuously as an employee of the Department of Public Safety until his retirement on April 6, 1952. For 15 years prior to retirement, he was employed as Superintendent of Police and Fire Telegraph, responsible for the installation, maintenance and repair of the telegraphic communications system operated by the Police and Fire Departments of Wilmington.

Prior to July 1, 1951, the appellant worked a 6-day week and received a fixed compensation wholly independent of the number of hours actually worked by him in the course of a week. He did not work regular hours but was subject to call at all times, and often worked evenings, Sundays and holidays, repairing storm damage, equipment failures and other defects in the system. At all times, while employed as Superintendent, the appellant worked without extra compensation for overtime. Prior to July 1, 1951, his fixed monthly compensation was $400.

On March 15, 1951, by the enactment of 48 *Laws*, Ch. 18, the General Assembly established a 5-day work week for all employees of the Department of Public Safety to be instituted on July 1, 1951. After the passage of said act, it became apparent to the Directors of the Department of Public Safety that the Bureaus of Fire and Police did not, at that time, have sufficient personnel to establish a 5-day work week. It was subsequently agreed between the Directors and representatives of the employees that the members of the Fire and Police Departments would continue to work a 6-day week until such time as the personnel of the respective Bureaus could be increased sufficiently to permit the establishment of a 5-day work week. As part of said agreement, the Directors agreed to pay the policemen and firemen additional compensation for the sixth day worked each week, computed on the basis of a daily rate of pay arrived at by dividing the then compensation of the employees for a 6-day week by five. Thereafter, the policemen and fire-

men were compensated on this basis until July 1, 1952, approximately three months after the retirement of the appellant.

Commencing July 1, 1951 and until his retirement on April 6, 1952, the appellant received a total monthly compensation of $479.70, arrived at by the aforesaid method.

The actual dispute in this cause involves the monthly payment to appellant of the additional $79.70. He contends that such sum represented "salary" to him and is thus to be included in the computation of his pension, while the appellees contend that said sum represents overtime pay and not "salary", and is thus to be excluded in the computation of his pension benefits.

The Superior Court was of the opinion that the dispute was controlled by the decision of this court in *State ex rel. Murray v. Riley*, 6 *Terry* 192, 70 *A.* 2d 712, 713, 14 *A. L. R.* 2d 630, and directed the entry of a declaratory judgment to the effect that the appellant's salary at the time of his retirement was $400 per month. From this judgment appellant appeals.

*State v. Riley, supra,* involved the amount of pension to which a retired fireman was entitled under the same pension law now before us. The facts of the case were that, due to the difficulty of getting personnel for the Bureau of Fire during the war years, the Department of Public Safety had authorized the payment to firemen who worked their allotted two days off each month an additional three days' pay. The retired fireman in the *Riley* case sought to have such additional pay included as salary for the purpose of computing his pension. This court held that the payment of three days' pay for two days' additional work each month, since it was paid only if the two days were actually worked, constituted irregular overtime compensation and was, therefore, not included as a part of the salary to be used in the computation of pension benefits. In the course of the opinion, salary was defined within the meaning of the Firemen's Pension Act as follows:

"Salary suggests regular compensation at fixed periods without regard to the number of days actually worked so long as the

employee is in good standing with his employer. Thus, providing there be no agreement to the contrary, an employee on salary might reasonably expect to receive his regular salary even though he missed an occasional day's work due to illness or otherwise; and compensation paid during vacations incident to the position is ordinarily based upon the salary regularly paid. Traditionally 'salary' does not seem to have encompassed situations where additional pay is given for overtime."

We agree with the *Riley* case and with the definition of "salary" in the Firemen's Pension Act contained therein. We think the Superior Court properly regarded the *Riley* case as controlling the suit now before us, but we disagree with the Superior Court's application of the *Riley* case.

In the facts before us, it appears that the appellant's services in connection with his employment were required without regard to the day, or hours of the day, and that he worked whenever his services were needed. It also appears that from January 1, 1951 to April 6, 1952 the appellant received as compensation the sum of $479.70 monthly, irrespective of the days or hours he actually worked, and that, as a matter of fact, during this period he did not work three weeks of vacation time, and that he had other absences from his employment due to illness. Irrespective of these absences, he continued to be paid monthly at the rate of $479.70.

We think, therefore, that the payment of this sum to the appellant, in the language of the *Riley* case, was "regular compensation at fixed periods without regard to the number of days actually worked."

Accordingly, we are of the opinion that the appellant's salary, within the meaning of the Firemen's Pension Act, at the time of his retirement was $479.70, and that he is entitled to receive as a pension one-half of that sum monthly.

The appellees urge that since the appellant's payments under the contributing feature into the Firemen's Pension Fund during the period July 1, 1951 to April 6, 1952 were made on

the basis of a monthly compensation of $400 per month, that he is thereby estopped to claim a greater salary for the computation of his pension. We think that no such estoppel arises, and that the failure to pay into the Pension Fund on the basis of the greater salary can be adjusted between the appellees and the appellant when the additional pension payments are made.

Appellees also argue that the additional pay for the sixth day of work made to firemen was clearly intended to be overtime and not a part of the regular compensation of the members of the Bureau of Fire. The appellees point to minutes of the meetings of the Directors of the Department of Public Safety to establish this fact. However, the minutes of the meetings of the Directors are not clear and, as a matter of fact, at a meeting of the Directors held July 3, 1951, it is recited that the Directors agreed that all of the regular members of the Bureau of Fire would work a 6-day week and receive compensation for the sixth day on a daily rate based on a 5-day week, and that civilian members of the Department would not be required to work more than 5 days unless their services were needed and, in that event, such civilian employees would be "compensated for any overtime worked". It thus appears that a distinction was made by the Directors between uniformed employees and civilian employees. The latter clearly were to be paid overtime for the extra day worked but the former were to be paid a fixed compensation for six work days. In any event, we think the cause must be decided upon its admitted facts. From them it is clear that appellant received a fixed monthly salary of $479.70 irrespective of the number of days or hours he actually worked.

The judgment of the Superior Court will, accordingly, be reversed with instructions to enter a declaratory judgment that the salary of the appellant at the time of his retirement on April 6, 1952 was $479.70 per month.