THE STATE OF DELAWARE, on the relation of Edward Murray, v. JOHN E. RILEY, ROBERT DENNEY, WILLARD REESE, FRANCIS MARSDEN, WALTER HELM, ROBERT H. RICHARDS, JR., MATTHEW JUDGE, BENJAMIN BROWN, Directors of the Department of Public Safety of the City of Wilmington, FRANK J. CORSANO, Chairman of the Finance Committee of the Council of the City of Wilmington, HARVEY WOOD, Chairman of the Department of Public Safety Committee of the Council of the City of Wilmington.

(*November* 10, 1948.)

RICHARDS, C. J., sitting.

*Martin G. Hannigan* for Relator.

*David F. Anderson,* City Solicitor, for Respondents.

Superior Court for New Castle County, No. 198, November Term, 1946.

RICHARDS, C. J.:

Chapter 118 of Volume 33 of the Laws of Delaware, provides for the retirement of members of the Bureau of Fire, of the Department of Public Safety, of the City of Wilmington, and establishes a fund from which they are entitled to receive a pension so long as they remain on the retirement list.

Section 1 of said Act provides that any member of said Bureau of Fire who shall become disabled or incapacitated from injuries received while in the active performance of official duty, and any member who has performed faithful continuous service as such member for a period of not less than fifteen years who shall become permanently incapacitated from performing such regular active duty may be retired by the Directory of the Department of Public Safety from regular active service and placed upon the retired list. Said section further provides that all members of said Bureau who shall have performed faithful continuous service as such member for a period for at least twenty years shall upon their own application be placed upon the retired list whether they are disabled or not.

It is also provided by section 1 of the Act that each person retiring as therein provided shall be entitled to receive from the sum provided for that purpose, an amount equal to one-half of the amount of his salary at the time of his retirement, so long as he remains upon the retired list, said amount to be paid monthly.

Section 6 of said Act, as amended by Chapter 168 of

Volume 45 of the Laws of Delaware, sets up a Firemen's Pension Fund and provides that each member of said Bureau of Fire who shall participate in the benefits of said Firemen's Pension Fund shall pay to the Trustees of said Fund four percent of the salary of such member.

The Relator having served for twenty years as a member of said Bureau of Fires was retired upon his own application.

It is agreed that the salary of the Relator at the time of his retirement was $202.57 a month. If he worked on the two days which he was entitled to take off each month, he would have received three extra days pay, or time and half time for his overtime work, amounting to $20.25, representing three days pay at $6.75 a day. Adding this amount to his regular monthly salary his compensation for each month would be $222.82, and his pension upon his retirement would be $111.41. Can this extra compensation which he received by working overtime be considered a part of his regular salary? It cannot be looked upon as being fixed and certain. Whether he receives it depends not only upon his willingness to perform the extra work but his physical ability to do so. From March 15, 1945 to June 30, 1945, he worked the two extra days each month and received the extra compensation in addition to his regular salary. During the period from March 15, 1945 to May 15, 1945, he paid four percent of this pay which he received for overtime work into the Firemen's Pension Fund, but these payments were refunded to him on May 31, 1945, and after that time he did not pay any part of the payments which he received for overtime work into said Fund. He did not work overtime from July 1, 1945 to July 15, 1945 but from that date to November 15, 1945, he worked the two extra days each month and received total compensation of $222.82 a month, being his regular salary for one month plus three days extra pay.

■    The pension system which exists in this country today had its origin in the American Revolution.  Generally speaking all pensions are based upon statutory authority. The right to a pension depends primarily upon the statute under which it claimed.  Not only has Congress enacted many laws providing for pensions, but similar statutes have been passed by the Legislature of practically every state in the country.  40 *American Jurisprudence* 960-962-980, *Sec.* 1-4-23.

■ ■    In construing pension statutes it should be considered that they serve a beneficial purpose both to the public and to the person who is to receive the pension. Members of a police and fire department are often required to perform duties which place them in great danger and every encouragement should be given them to faithfully discharge the duties which are assigned to them.  *Klench v. Board of Pension Fund Commissioners,* 79 *Cal. App.* 171, 249 *P.* 46, 51; *Hurley v. Sykes et al.,* 69 *Cal. App.* 310, 318, 231 *P.* 748.

In the case of *King v. Abbott et al.,* 4 Terry 472, 48 *A.* 2*d* 745, 749, this court had before it a question in some respects similar to the question involved in the present case. The Court was considering in that case the pension to which a member of the State Police was entitled upon retirement. An examination of the two statutes discloses a material difference between them.  The State Police Pension Act provides for a pension in "an amount equal to one-half of the monthly salary received by such member at the time of his retirement."  41 *Del. Laws, c.* 262, § 3.  The Act pertaining to the Bureau of Fire provides for a pension for its members in "an amount equal to one-half of the amount of his salary at the time of his retirement".  The difference between these two statutes is readily seen.  The one relied upon by the State Police bases the pension upon

the monthly salary received, while the one relied upon by the members of the Bureau of Fire bases the pension upon the monthly salary. In *King v. Abbott, et al. supra,* the monthly payment was broken down on the payroll records of the Highway Department into three items; $170 as a base salary, $15 due the pensioner as a specialist under the State Police Compensation Incentive Plan and $15 under an Act relating to the increases in salaries of State Employees by reason of the increased cost of living. The argument was made that the amount received by being rated as a specialist should not be considered as a part of the officer's salary because said rating was revocable by the Superintendent of Police; and likewise argued that the amount received under the Act increasing the salary of State employees should not be considered as a part of his salary because it was not permanent. The Court said, "A moment's reflexion will make manifest that an undertaking to pay compensation at a specified rate for a limited period to one employed for an indefinite term is not incompatible with the notion of 'salary'. The increases were payable at the time of relator's retirement in May 1944. It is the amount of the monthly salary at that time, not what was received sometime before or what would otherwise be received after retirement, which the statute makes determinative in computing the pension".

The generally accepted meaning of the word "salary", is a reward or consideration paid, or agreed to be paid, to a person at regular intervals, by the year, the month or week for services.

*King v. Abbott, supra; Webster's New International Dictionary, 2nd Ed., p.* 2203. There is nothing in the act under consideration to indicate that the word was not to be given that accepted meaning.

For a period of two months the relator paid four percent of the overtime pay which he received into the

Firemen's Pension Fund, but the amount so paid was refunded to him and after that time he never paid any portion of his overtime pay into said fund. This at least indicates, that neither the Board of Trustees of the Firemen's Pension Fund, nor the Relator, considered the amount which he received if he worked the two extra days each month a part of his salary.

There is no doubt that at the time of his retirement the Relator was paid each month by the Department of Public Safety a salary of $202.57. If the amount which he received as extra pay for overtime work each month must be added to this amount, it would be necessary to wait until the end of each month in order to determine what his salary was. Such a salary could not be considered a regular salary, as it would vary with the amount of overtime pay which he received.

It therefore appears to be clear that Relator's regular salary at the time of his retirement was $202.57 a month, and he is consequently entitled to receive a pension of one-half of that amount.

The petition is hereby dismissed.