Scott Township Appeal.

Argued January 11, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

540

*Maurice Louik,* for appellants.

*Louis D. Cooper,* with him *Cooper, Hunter & Lewis,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 29, 1957:

Pursuant to the provisions of The First Class Township Code[1] a number of residents of Scott Township, Allegheny County, petitioned the Court of Quarter Sessions to change the existing ward structure of the township. At the conclusion of the statutorily prescribed preliminary proceedings, the court entered a nisi decree reducing the number of wards in the township from seven to five. Appellant Wenger, a resident of the township, was granted leave to intervene and file exceptions. The court en banc, (one judge dissenting), made the decree final and also entered an order

---

[1] Act of May 27, 1949, P. L. 1955, as amended, 53 P.S §§19092-101 to 19092-3610 (Supp.).

terminating the tenures of office of the incumbent commissioners and providing for the election of new ward commissioners.

The Township of Scott and the commissioners adversely affected by the termination order thereupon petitioned for leave to intervene. Leave was granted to the Township but denied to the individual commissioners. From the order denying intervention, and from the final decree, the present appeals are prosecuted.

Wenger appeals to this Court maintaining that the redistricting fashioned by the court below is unsupported by evidence. The Township of Scott contends that the provisions of the order terminating the offices of the incumbent township commissioners are contrary to the Township Code and violate Article VI, Section 4 of the Pennsylvania Constitution.[2] Commissioners Hartz and Shaffron appeal from the order denying their petitions to intervene.

The First Class Township Code expressly provides that there shall be no appeal from a decree of a quarter sessions court changing the ward structure of a township.[3] This Court will therefore consider the matter as on certiorari only, and will direct its inquiry to (1) the jurisdiction of the court below, (2) the regularity of the proceedings therein held, and (3) the

[2] "All officers shall hold their offices on the condition that they behave themselves well while in office. . . .

"All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."

[3] "From the final decree as entered by the court of quarter sessions, there shall be no appeal." Act of May 27, 1949, P. L. 1955, §10, 53 P.S. §19092-403 (Supp.).

scope of the powers possessed by the court. *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 130 A. 2d 686 (1957); *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514, 518, 55 A. 2d 534 (1947). There is no question that the proceedings were regular or that the jurisdiction of the court below properly attached. We must restrict our investigation, then, to the question of whether the court below acted within the limits of its powers. Cf. *United States to the use of Wilson v. Walker,* 109 U. S. 258, 265-267 (1883) (on collateral attack, judgment not within statutorily conferred "power of jurisdiction" held void).

The court of quarter sessions derives its power to redistrict or change the ward structure of townships from the provisions of The First Class Township Code. We inspect this statute to determine whether the redistricting decree is authorized thereunder.

Section 401[4] provides in part: "The court of quarter sessions, upon petition, may . . . *redivide* any township . . . into wards, *erect* any wards out of two or more adjoining wards, or parts thereof, *divide* any wards already erected into two or more wards, or *alter the lines or boundaries* of any two or more adjoining wards, and may cause lines or boundaries of wards to be fixed and established . . . ." (Emphasis throughout supplied.)

There is no specific provision authorizing an abolition or consolidation of wards as was here attempted by the lower court. Nor can the words *"redivide, erect, divide,* or *alter"* be said to encompass such a power.[5]

---

[4] Act of May 27, 1949, P. L. 1955, §10, 53 P.S. §19092-401 (Supp.).

[5] In *The Ind. Dist. of Fairview v. Durland,* 45 Iowa 53, 56 (1876), The Supreme Court of Iowa distinguishes "redivision" from "consolidation". Consolidation comprehends the "combination into one unit" and therefore, "to consolidate means something more than rearrange or redivide."

Only in one situation is the power to consolidate specifically made available to the courts—section 401 further provides: "wards which now, or at any time hereafter shall, contain less than three hundred and fifty registered electors therein may in the discretion of the court be abolished. . . . *All other wards as heretofore established shall remain as heretofore until altered or divided as provided in this article.*"[6]

In the present case the court properly abolished Ward 6 which had less than 350 registered electors. However, Wards 1, 2, and 3 were consolidated into one new ward called "Ward 1". As the number of registered electors in each of these abolished wards exceeded 350,[7] the consolidation was without statutory authorization.

If the legislature had intended by Section 401 generally to empower the court of quarter sessions to consolidate wards, then the specific power given the court to abolish any ward containing less than 350 registered electors would have been needless. We will not presume that the legislature intended to confer upon the court a power already given. It is a well-established canon of interpretation that the mention of one thing in a statute implies the exclusion of others not expressed. *Commonwealth ex rel. Maurer v. Witkin,* 344 Pa. 191, 196, 25 A. 2d 317 (1942). Since the legislature expressly empowers the court to abolish wards in one circumstance only, it thereby clearly voices its intention to deny that power in all other circumstances. *Kusza v. Maximonis,* 363 Pa. 479, 482, 70 A. 2d 329 (1950). See also, Act of May 28, 1937, P. L. 1019, Art. IV, §51, 46 P.S. §551.

---

[6] See note 4, supra.

[7] In May, 1955, the number of registered voters in the three wards were as follows: Ward 1—454: Ward 2—476; Ward 3—501.

If the legislature had intended to empower the court to abolish or consolidate wards it knew how to express its intention.

The legislature provided that: "Wards in cities of the first class may be created, divided or *consolidated,* by the court of quarter sessions[8] . . ."

In the Second Class City Code[9] it provided: ". . . wards in cities of the second class may be divided, *consolidated,* or new wards therein created. . . ."

And again, in The Borough Code[10] the legislature provided: "The court of quarter sessions, upon petition, may divide boroughs into wards, erect new wards out of two or more adjoining wards or parts thereof, *consolidate* two or more wards into one ward, divide any ward already erected into two or more wards, alter the lines of any two or more adjoining wards, or cause the lines or boundaries of wards to be ascertained and established."

Our conclusion that the legislature intended a reduction in the number of wards *only* by abolition of wards in which the number of registered electors falls below 350 is also based on a consideration of the statute as a whole. The Code contains a comprehensive schedule for the election of township commissioners when townships are first divided into wards[11] and when, in a township previously divided into wards, the township is redivided and new wards are created.[12] An election procedure is also provided when wards are abolished because the number of registered electors in

---

[8] Act of June 25, 1937, P. L. 2080, §1, 53 P.S. §3433 (Supp.).

[9] Act of April 24, 1905, P. L. 307, §1, 53 P.S. §9901.

[10] Act of July 10, 1947, P. L. 1621, §9, 53 P.S. §12551 (Supp.).

[11] 53 P.S. §19092-407 (Supp.).

[12] Id. at §19092-408.

a ward has fallen below the requisite 350, and the number of wards remaining is less than five.[13]

But the Code does not supply election procedures *in any other* situation. This omission when viewed in the light of the comprehensive election system incorporated in the act further substantiates our conclusion that the act does not *generally* permit reductions in the number of wards in a first class township.

When the legislature permits the abolition or the consolidation of wards, it must provide for disposition of the elective officers affected by the consolidation. Thus, the legislature provided in the case of second class cities:[14] "All councilmen in the ward or wards affected by the division, creation or consolidation, as aforesaid, shall continue in office, and perform their duties as councilmen until the expiration of the terms for which they were severally elected. . . .

"All aldermen, constables and other elective officers of the ward or wards affected by the creation, division or consolidation, as aforesaid in office at the time of such division, creation or consolidation, shall continue in office until the expiration of the terms for which they have been elected . . ."

So also in The Borough Code:[15] "In all other cases, officers in office at the time any changes are made pursuant to the preceding sections of this article, shall remain in office until the expiration of the terms for which they have been elected."

If we were to hold that the court had the power to reduce the number of wards by abolition or consolidation, we would then be compelled to engage in an act of judicial legislation, for it would be neces-

---

[13] Id. at §19092-401.
[14] Act of April 24, 1905, P. L. 307, §§3, 4, 53 P.S. §§9906, 9907.
[15] Act of July 10, 1947, P. L. 1621, §9, 53 P.S. 12556 (Supp.).

sary for us to provide for the incumbent elective officers. We would be compelled to determine whether the incumbent officers should be retained or their tenures terminated—and if retained, the manner of their retention.

Appellee relies strongly on the *Summit Hill Borough* case, 240 Pa. 396, 87 Atl. 857 (1913), in which this Court affirmed and adopted the opinion of the Superior Court. In that case, proceedings to reduce the number of wards from four to three were instituted under the Borough Act of 1874,[16] the applicable provisions of which are substantially identical with those of The First Class Township Code. That case held (1) that the act was not repugnant to the Pennsylvania Constitution, and (2) that the municipal officers, whose tenures of office were terminated by the consolidation decree, could contest their removal only in an action of quo warranto. We are not concerned with either of those problems here. The Superior Court did not discuss the power of the court under the Borough Act then applicable to enter a decree reducing the number of wards, and it appears that the issue was never raised. The *Summit Hill Borough* case does not, therefore, control our decision in the present proceeding.[17]

We conclude that the decree entered by the court below effecting a redistricting program which included a consolidation or elimination of wards, and thereby a reduction in their number, exceeded the powers conferred by The First Class Township Code.

---

[16] Act of May 14, 1874, P. L. 159, as amended; Act of March 24, 1877, P. L. 47.

[17] The legislature recognized the defect in the act even if the Court did not, because it amended the Borough Act to include consolidation. See text at note 10.

In view of our disposition of this matter, we need not consider the other questions raised by these appeals.

The decree of the court of quarter sessions is reversed. The Township of Scott is to bear the costs of these appeals.