PAMELA M. NORMAN, formerly Hadassah Goldman, Plaintiff, v. BERNARD J. GOLDMAN, Defendant.

(*June* 15, 1961. *Opinion revised and refiled August* 28, 1961.)

LYNCH, J., sitting.

*Arthur J. Sullivan* and *Henry N. Herndon, Jr.* (of Morris, James, Hitchens and Williams) for Plaintiff.

*Stanley C. Lowicki* and *A. James Gallo* for Defendant.

Superior Court for New Castle County, No. 81, Civil Action, 1958.

LYNCH, Judge.

Plaintiff recovered a judgment against defendant in this Court, based on a decree of the Domestic Relations Court of Kanawha County, West Virginia, which "* * * decreed that the defendant * * * pay the plaintiff * * * the weekly sum of $35.00 * * * for maintenance, support and education of" the parties' infant child. Plaintiff, to enforce payment of the judgment, caused writs of attachment *fi. fa.* to be issued and

served on defendant's employer. Employer's paymaster testified that defendant was employed as a salesman and was paid a salary and commission. Defendant conceded this testimony was correct.

Defendant moved to quash the attachment writs because of Title 10 *Del. C.* 1953, § 4913, the pertinent provisions of which are:

"(a) Ninety per cent of the amount of the wages for labor or service of any person residing within New Castle County * * * shall be exempt from mesne attachment process and execution attachment process under the laws of this state, except where the execution attachment process is for board or lodging or both, and for an amount not exceeding $50.00 exclusive of costs.

"(b) The provisions of this section * * * shall apply solely to debts incurred for or on account of the purchase of food, provisions and articles used in the home, commonly designated as the necessaries of life, * * *."

Defendant's motion was argued and an opinion filed June 15, 1961, denying the motion because defendant was not a wage earner but was receiving a salary and commissions, consequently he was not in a position to avail himself of the exemption provisions set forth in the wage exemption statute.

Defendant filed a motion for reargument. This motion was granted. The parties filed new briefs and the case was reargued orally. The Court reconsidered the case and this opinion is a revision of that filed June 15, 1961.

On reargument defendant contended strenuously that the word "salary" is synonymous with the word "wages" and the Court had erred in differentiating these terms in its original opinion.

Defendant argues that the language of Title 10 *Del. C.* § 8110—Statute of Limitations—as to claims for "wages,

salary or overtime for work, labor or personal services performed" should be considered and read with the wage exemption statute to determine the meaning to be given the word "wages" in the exemption statute. Defendant cites *Aero Service Corporation v. Gordy*, 1954, 10 *Terry* (49 *Del.*) 59, 109 *A.* 2d 393, and *Sorenson v. Overland Corp., D. C.*, 142 *F. Supp.* 354, affirmed 3 *Cir.*, 1956, 242 *F.* 2d 70, both of which cases involved the application of Title 10 *Del. C.* § 8110.

This argument is rejected. The precise holding in *Aero Service* was that the statute "has reference to the claims of servants, or members of the laboring classes and salaried employees" [49 *Del.* 59, 109 *A.* 2d 394]—and the holding was based on the language of the statute; it did not consider or define the word "wages" or hold it as synonymous with "salary"; the Court held the statute did not apply to the facts of the case.

The precise holding in *Sorenson* was that the statute did apply to the suit in question—one brought by a corporate officer against the corporation "for indemnification for attorney's fees and expenses growing out of a stockholders' suit against the officer"—because 10 *Del. C.* § 8110 covers, not only wages and salaries, but also claims for "damages * * * resulting from the failure to pay * * * for any other benefit arising from such * * * personal service". The District Court held that 10 *Del. C.* § 8110 "bars claims for 'wages', 'salary', and it likewise applies * * * to any other 'benefits' arising from the corporate-officer employment relationship. The word 'benefits' is embracing and covers all advantages growing out of the employment." [142 *F. Supp.* 360.]

There is nothing in the *Sorenson* opinion to the effect that "wages" and "salary" are synonymous and are to be used interchangeably,—which is defendant's argument here. The *Sorenson* opinion of the Court of Appeals doesn't help defendant's argument since that Court said only "* * * that

a claim (such as was asserted) is in the nature of a benefit arising from one's status as a director. It is in the nature of compensation * * *. * * * we think it is the type of thing that comes under the provision of this one-year statute." [242 *F.* 2d 73.]

It is significant that defendant did not cite one case that directly substantiated his argument on this phase of the case; this failure tends to strengthen the conclusion reached by the Court that the terms "wages" and "salary" are not synonymous, as contended, but have a distinct and different meaning, which was the Court's original determination.

The question for decision is whether a person being paid a salary—and receiving a commission, as here—can avail himself of the protection of the exemption provisions of the statute which uses the term "wages".

The present statute excludes from execution or attachment process—

"ninety per cent of the amount of *the wages for labor or service*[1] of any person residing within New Castle County." The italicized language in the present statute, 10 *Del. C.* § 4913, is identical with that used in the initial wage exemption statute[2] of 1873 and with one insignificant exception[3], of all its predecessors[4].

In construing the meaning to be given to words "wages for labor or service" appearing in the statute, the Court is guided by certain rules of construction.

---

[1] Emphasis supplied throughout.

[2] 14 *Del. L.* Ch. 561, § 1.

[3] 22 *Del. L.* Ch. 209. § 1 speaks of "the wages for labor or *services*" as being partially exempt from attachment.

[4] 15 *Del. L.* Ch. 185; 16 *Del. L.* Ch. 542; 40 *Del. L.* Ch. 244; see also 41 *Del. L.* Ch. 211 and 48 *Del. L.* Ch. 263, which refer to earlier statutes exempting "wages" from attachment.

*First*: "words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 *Del. C.* § 303[5]; *Federal United Corporation v. Havender*, 1940, 24 *Del. Ch.* 318, 335, 11 *A.* 2d 331, 339; *State ex rel. Foulger v. Layton*, 8 *W. W. Harr.* 556, 562, 194 *A.* 886, 888; *Rash v. Allen*, 1 *Boyce* 444, 471, 76 *A.* 370, 381; *Haddock v. Board of Education*, 32 *Del. Ch.* 245, 251, 84 *A.* 2d 157.

*In re Riebs' Estate*, 1959, 8 *Wis.* 2d 110, 98 *N. W.* 2d 453, 455, involved a statute, (W. S. A. 103.39(2), providing that "wages" of a deceased person should, on the death of an employee, be paid by employer to wife, children or other dependents. Riebs had been president of a corporation, at a salary of $20,000 annually. At his death more than $11,000 was found in the hands of the corporation; moneys he had left there. Claims were asserted by the executors of his estate, as personal property devolving to them, and by the executors of his wife's estate, she having died after he did, which claim was asserted on the basis of the statute. The Wisconsin Supreme Court ruled that the term "wages" in the statute was used "in its common meaning of money paid to an employee for manual or physical work done usually on an hourly, daily or piecework basis and distinguished from 'salary' as a fixed payment at regular intervals for services." That Court applied the rule of construction that where words of a statute are clear they must be given their ordinary meaning. See also *Smith v. Board of Trustees*, 238 *Iowa* 127, 25 *N. W.* 2d 858.

*Second*: When language is clear a statute must be held to mean what is plainly expressed. *Federal United Corporation v. Havender*, 24 *Del. Ch.* 318, 331, 11 *A.* 2d 331, 337; *Hartford Acc. & Indem. Co. v. W. S. Dickey Clay Mfg. Co.*,

---

[5]*Del. C.* 1852, § 35, similarly provides that "all words and phrases shall be construed according to the common and approved usage of our language."

26 *Del. Ch.* 411, 422, 24 *A.* 2d 315, 320; *Delaware Steeple-chase & Racing Ass'n v. Wise,* 2 *Terry* 587, 598, 27 *A.* 2d 357, 361, affirming 2 *Terry* 182, 188, 18 *A.* 2d 419, 421; *Pike v. Satterthwaite,* 1 *Terry* 595, 597, 15 *A.* 2d 430, 431.

*Third*: The maxim "Expressio unius est exclusio alterius" seems particularly applicable here. It is stated in Sutherland, *Statutory Construction,* 3rd Ed., § 4915—

*"As the maxim is applied to statutory interpretation, where* a form of conduct, the manner of its performance and operation, and the *persons and things to which it refers are affirmatively* or negatively *designated, there is an inference that all omissions were intended by the legislature.* * * *"* The same author observes, § 4916—

"While the maxim has received considerable mention in legalistic thinking, it is not of legal origin; rather it is a product of 'logic and common sense'. * * *"

The author, in the following section, suggests this cautionary note—

"The maxim * * * requires great caution in its application, and in all cases is applicable only under certain conditions as a tool of statutory interpretation the maxim is important only insofar as it is a syllogistic restatement that the courts will first look strictly to the literal language of the statute to determine legislative intent and so, where the meaning of the statute is plainly expressed in its language, * * * a literal interpretation will prevail. * * *"

The Superior Court, sitting in Banc, applied the maxim in the case of *State ex rel. Green v. Foote,* 5 *W. W. Harr.* (35 *Del.*) 514, 521, 168 *A.* 245, 248.

The language used by the Pennsylvania Supreme Court in the fairly recent case of *Petition for Division into Wards, etc.,* 388 *Pa.* 539, 130 *A.* 2d 695, 698—

"If the legislature had intended to empower the court to abolish or consolidate wards it knew how to express its intention."

illustrates when and why the maxim can and does aid in determining the meaning of a statute. So also is the reference by the Vermont Supreme Court in *In re Downers' Estate*, 101 *Vt.* 167, 142 *A.* 78, 82, where that Court, by comparing the positive language of a statute with what had been omitted, determined the taxability of a legacy. That Court in applying the maxim cited and quoted from an opinion by the late Chief Justice Taft, in *Ford v. United States*, 273 *U. S.* 593, 611, 47 *S. Ct.* 531, 537, 71 *L. Ed.* 793, 801, where it was said—

"This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment."

If the General Assembly had intended to exempt salary and other forms of remuneration arising from the employer-employee relationship as well as "wages" from garnishment process, it could have easily done so by use of appropriate language, such as inclusion of the word "salaries" or by using a general term, such as "compensation" or "recompense" or "earnings". See Vol. 2, *Freeman on Executions*, 2d Ed., § 234, Page 1254. It is to be noted that when the General Assembly amended the wage exemption statute, 42 *Del. Laws*, Ch. 152, now 10 *Del. C.* § 3503, as amended, in its application to public employees, it used the phrase "compensation from funds of the State, county, district or municipality for any services rendered by such employees * * *" rather than "wages". When the General Assembly has been considering salaries, it has used the word "salary". *e.g.*, 29 *Del. C.* § 6316; and when it

has been concerned with "wages", it has employed that word in its usual sense. *e.g.* 12 *Del. C.* § 2105. The provisions of the Code abound with other examples too numerous to consider in detail, *i.e.* "compensation": 10 *Del. C.* § 304; "wages": 38 *Del. L. Ch.* 1, § 4; "salary": 2 *Del. C.* § 114, 3 *Del. C.* § 5103, 9 *Del. C.* § 8205, 20 *Del. C.* § 122, 29 *Del. C.* §§ 2501, 2902, 2904.

Some treatises and even some decided cases make somewhat broad and general statements to the effect that "wages" and "salaries" are synonymous and used interchangeably. See *Shinn on Attachment and Garnishment*, Vol. 2, § 557(c), Page 942; 557(d), Page 944; *Freeman on Executions*, 3d Ed., Vol. 2, § 234; 35 *C. J. S.* Exemptions § 47; and 23 *Am. Jur.*— Exemptions—§§ 64, 65, 66, 67. I cannot, however, agree with or accept these broad and general statements; such statements have to be analyzed and the statutes under consideration in them examined for specific terminology to see to what extent such interchangeable use may be applicable in light of the particular statutory language. The variation in the language used in these exemption statutes is considered in *Freeman on Executions*, 3d Ed., Vol. 2, § 234. The author commented at Page 1246—"It will be observed that these statutes, while addressed to the accomplishment of substantially the same objects, vary in their praseology".

■ *Fourth*: A court must look to the particular word or phrase in a statute from which meaning of the statute is to be determined in order to give meaning and effect to the entire statute. See *Aero Service Corporation v. Gordy, supra,* and *In re Stryker*, 158 *N. Y.* 526, 53 *N. E.* 525 discussed post. To paraphrase the language in the Stryker case "the most important word in the [wage exemption, 10 *Del. C.* 1953, § 4913] statute is the word 'wages'. It was wages" that was the concern of the General Assembly when that Body was, in 1873, seeking to exempt "wages for labor or service * * *"

from execution or attachment process; it, however, evinced no interest or concern for those receiving a "salary"; it showed no intent to exempt "salaries" as it had "wages", and so those who are paid "salaries" may not claim exemption under the language used in the statute.

The common and approved meaning of the word wages is "pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees." *Bell v. Midland National Life Insurance Company*, S. D. 1960, 102 *N. W.* 2d 322, 328; see also *Heard v. Crum*, 1895, 73 *Miss.* 157, 18 *So.* 934; *Gilbert v. State Mutual Life Assurance Co.*, 1958, 7 *A. D.* 2d 778, 180 *N. Y. S.* 2d 7; *Webster's New International Dictionary; In re Riebs' Estate* and *Smith v. Board of Trustees, supra.*

The Court should not stop here, for the word "wages" in the statute is followed by the phrase "for labor or service" and identical phrasing was before the United States Supreme Court in *United States v. Laws*, 1896, 163 *U. S.* 258, 16 *S. Ct.* 998, 999, 41 *L. Ed.* 151, which was considering a statute prohibiting the importation of aliens under contracts "to perform labor or service" in the United States, as such statute applied to a chemist. In concluding that the statute was not applicable, the Court did so upon the ground that the "act was clearly intended to apply * * * to cheap, unskilled labor." So, too, in *Jorgensen v. Mickle*, 1930, 259 *Mich.* 571, 244 *N. W.* 167, Michigan Court concluded that an office helper did not perform "labor" for payment of which stockholders were liable under statute (Comp. Laws 1929, § 10026). And in *Weymouth v. Sanborn*, 1861, 43 *N. H.* 171, 173, the New Hampshire Court held that a physician's services did not constitute a claim for labor as to which the exception to the exemption of a homestead from execution process was applicable. The Court said:

"The common and ordinary signification of the term labor accords, we think, with the definition given by the best lexicographers, and is understood to be physical toil. And the term laborer is ordinarily employed to denote one subsists by physical toil, in distinction from one who subsists by professional skill. The exception of claims for labor would not, therefore, ordinarily be understood to embrace the services of the clergyman, physician, lawyer, commission merchant, or *salaried officer*, agent, railroad and other contractors, *but would be confined to claims arising out of services where physical toil was the main ingredient*, although directed and made more valuable by mechanical skill." (Emphasis supplied.)

A similar view was expressed in *Heebner v. Chave*, 1846, 5 *Pa.* 115, 117. The Court was there concerned with a statute which, in the Court's paraphrase, prevented "the wages of any labourers from being liable to attachment in the hands of the employer." At issue was the applicability of the exemption to sums due to a contractor from the other contracting party. In holding the exemption inapplicable, the Court said:

"The term labour is, to be sure, of very extensive signification. The merchant labours, the farmers labours, the professional man labours, and judges labour, as every member of this Court can testify. *But it is this very capability of enlarged extension which produces the necessity to circumscribe and limit the word as used in the statute, in order to accomplish what we believe must have been the intent of the legislature. That is, to secure to the manual labourer by profession and occupation, the fruits of his own work for the subsistance of himself and family.*" (Emphasis supplied.)

The term "wages" has been considered in numerous cases and consideration of them leads to the conclusion that the term "wages" has usually been given a different meaning

than should be accorded[6] the term "salary". As previously mentioned, courts usually restrict the term "wages" to sums paid as hire to domestic or menial servants and those employed in the various manual occupations. On the other hand, the term "salary" usually has reference to the compensation of clerks, salesmen, bookkeepers, other employees of like class and performing like services and supervisory personnel and officers of corporations, as well as public officers. *South & N. A. R. Co. v. Falkner*, 49 *Ala.* 115, 118; *State v. Duncan*, 1 *Tenn. Ch. App.* 334; *Adcock v. Smith*, 97 *Tenn.* 373, 37 *S. W.* 91, 92; *People ex rel. Van Valkenburg v. Myers, Sup.*, 11 *N. Y. S.* 217, 218; *Cane v. City of New York, Sup.*, 34 *N. Y. S.* 675; *Doyle v. City of New York, Sup.*, 132 *N. Y. S.* 774; *People v. Bloom*, 7 *Misc.* 2d 1077, 167 *N. Y. S.* 2d 179, 182; *In re Stryker*, 158 *N. Y.* 526, 53 *N. E.* 525; *State v. Ash*, 53 *Ariz.* 197, 87 *P.* 2d 270, 273; *Massie v. Cessna*, 239 *Ill.* 352, 88 *N. E.* 152, 154, 28 *L. R. A., N. S.*, 1108.

The distinction between the word "wages" and the word "salary" has been recognized over a long period of time, judicially in *Heebner v. Chave*, 1846, *supra* and *Cowdin v. Huff*, 1857, 10 *Ind.* 83, 85 and by the lexicographers of that period, as will appear in the discussion in the opinion in *People ex rel Van Valkenburg v. Myers, Sup.* 1890, 11 *N. Y. S.* 217, 218, post. See also *Wildner v. Ferguson*, 1889, 42 *Minn.* 112, 43 *N. W.* 794, 6 *L. R. A.* 338; *Jones v. Avery*, 1883, 50 *Mich.* 326, 15 *N. W.* 494, each of which held that salesmen are not laborers whose "wages" are exempt from garnishment pro-

---

[6]The term "salary" was defined by the Supreme Court of this State in *State ex rel. Murray v. Riley et al.*, 6 *Terry* (45 *Del.*) 192, 196, 70 *A.* 2d 712, 14 *A. L. R.* 2d 630 and by this Court in *State ex rel. Murray v. Riley*, 5 *Terry* (44 *Del.*) 505, 62 *A.* 2d 236, 239; in *State ex rel. King v. Abbott*, 4 *Terry* (43 *Del.*) 472, 475, 48 *A.* 2d 745, 746, as well as in *State ex rel. Hirst v. Black et al.*, 7 *Terry* (46 *Del.*) 295, 298, 83 *A.* 2d 678, 680. I could find no judicial definition in our courts of the term "wages". *Moore v. State of Del. U. C. C.*, 3 *Storey* (52 *Del.*) 209, 167 *A.* 2d 76, was concerned with a statutory definition of the word "wages", 19 *Del. C.* §§ 3313(c) and 3302(16).

ceedings; and *Lang v. Lang*, 1885, 64 *Wis.* 525, 25 *N. W.* 650, 651, where the opinion discusses, defines and applies meaning to the term "wages" as distinguished from the term "salary".

■ This time element is important in light of the fact our wage exemption statute, 15 *Del. Laws*, p. 309, Ch. 185, now Title 10, *Del. C.* § 4913, was passed in 1873. It is safe to assume that the members of that General Assembly gave the word "wages" the meaning it had at the time the statute was enacted. 82 *C. J. S.* Statutes § 329, Page 638 and cases in footnote 11; 50 *Am. Jur.*—Statutes—§ 236, Page 224. See *Gordon v. Jennings*, 9 *Q. B. D.* 45 (1882) discussed post. It is further safe to assume that the members of the General Assembly knew of the then recognized distinction in meaning between the words "wages" and "salary". I, therefore, conclude that the meaning of the word "wages" as it was understood to have been at the time the statute was enacted, including the then understood distinction between "wages" and "salary" was the sense used by the General Assembly and this is a canon of construction that will guide here.

A case which has an excellent discussion of the words "salary" and "wages" and noted the distinction between them is *People ex rel. Van Valkenburg v. Myers, Sup.* 1890, 11 *N. Y. S.* 217, where the Court, after reviewing the then recognized dictionary meanings of these two words, and a number of decisions, said at page 218:

"* * * The distinction between 'salary' and 'wages' is recognized by all lexicographers, by the courts in many adjudicated cases, and by the legislatures of this and other states, and by congress, in innumerable statutes. Webster defines 'salary' as follows: 'The recompense or consideration stipulated to be paid to a person for services, usually a fixed sum to be paid by the year, as to governors, magistrates, settled clergymen, instructors of seminaries, or other officers, civil or ecclesiastical. When wages are stated or stipulated by the month, week or day, we do not call the compensation "salary",

but "pay" or "wages", as in the case of military men and laborers.' He defines 'wages' as follows: 'Hire; reward; that which is paid or stipulated for services, but chiefly for services for manual labor, or for military or naval services. We speak of "servants' wages", "laborers' wages", or "soldiers' wages", but we never apply the word to rewards given to men in office, which are called "fees" or "salary".' *Abbotts Law Dictionary* defines 'wages' as follows: 'The agreed compensation for services rendered in a menial or subordinate capacity.' The same work defines 'salary' as 'a reward or compensation for services performed. It is usually applied to the reward paid to a public officer for the performance of his official duties.' *Burrill's Law Dictionary* defines 'salary' as 'an annual compensation for services rendered; a fixed sum to be paid by the year for services.' Worcester, referring to 'wages', says: 'In ordinary language the term "wages" is usually employed to distinguish the sums paid to persons hired to perform menial labor.' Winfield defines 'salary' as 'the per annum compensation to men in official and some other situations.' The same authority defines 'wages' as follows: 'The word "wages" means the compensation paid to a hired person for his services. This compensation to the laborer may be a specific sum for a given time of service, or a fixed sum for a specified work; that is, the payment be made by the job.' The same distinction between 'salary' and 'wages' is to be found in many cases, in which the courts have been called upon to construe the statutes containing those words. * * *"

*In re Stryker*, 1899, 158 *N. Y.* 526, 53 *N. E.* 525, involved construction of a statute (*Laws* 1885, c. 376) giving a preference to "wages" of "employees, operatives and laborers". Claims were asserted under this statute by a clerk, a bookkeeper, a superintendent of the corporation, foremen and by draftsmen,—all of whom had been on salary. They sought preferences on the basis that their compensation was in reality "wages". The claims had been rejected by the lower court, and

this position was sustained, 53 *N. E.* at page 525, by the New York Court of Appeals, where that Court said:

"The most important word in the statute is the word 'wages'. It was wages that the legislature intended to prefer in the distribution of the assets of the insolvent corporation, not salaries, nor earnings, nor compensation. It was not intended to prefer the claims of all employees; but it was manifestly intended to limit the preference to the particular class whose claims would be properly expressed by the use of the word 'wages.' This word is applied in common parlance specifically to the payment made for manual labor, or other labor or menial or mechanical kind, as distinguished from salary and from fee, which denotes compensation paid to professional men. Cent. Dist. In its application to laborers and employees, it conveys the idea of subordinate occupation, which is not very remunerative, of not much independent responsibility, but rather subject to immediate supervision. This was the construction which this court placed upon the statute in the case of *People v. Remington,* 45 *Hun.* [329,] 338, affirmed here on the opinion below, 109 *N. Y.* 631, 16 *N. E.* 680. It was said in that case that the statute was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families; and it was not designed to give a preference to the salaries and compensation due to officers and employes of a corporation occupying superior positions of trust or profit. I cannot doubt that this is a correct interpretation of the statute, which conforms to the purpose which the legislature evidently had in view in its enactment. In order to give the preference provided by the statute, the claim must be for wages in the ordinary sense of that term. It was not, we think, the purpose of the statute to secure a preference for claims due to the clerical force engaged in transacting the business, nor to the superintendent, foreman, or officers of the corporation who are compensated by a fixed yearly salary. * * *"

*In re Stryker* was cited and followed by the late Mr. Justice Cardozo in *Austin v. City of New York*, 258 *N. Y.* 113, 117, 179 *N. E.* 313, 314, while he was a member of the New York Court of Appeals, and by Judge Learned Hand in the Second Circuit Court of Appeals, in *MacGregor v. Johnson-Cowdin-Emmerich*, 26 *F.* 2d 311, which case considered the same statute, in considering a claim by a department head who was compensated by a monthly salary and a bonus measured by the net profits. See also *Gay et al. v. Hudson River Electric Power Co.*, 2 *Cir.*, 178 *F.* 499.

The distinction between the word "wages" and the word "salary" was recognized by the English Courts. *Gordon v. Jennings*, 9 *Q.B.D.* 45 (1882), where the Court held that the "salary" of the secretary of a corporation could not be exempted as "wages" under the English Wages Attachment Abolition Act. One of the members of the Court reasoned (P. 46):

"* * *. The intention of the Act is to abolish the attachment of 'wages'. Now it may be that the term 'wages', according to the etymological meaning of the word, may be correctly applied to any remuneration for services, but *it seems to me that the popular signification must be looked to.* The term 'wages' is not applied to the remuneration of a high or important officer of the state or a company, for instance, but to that of domestic servants, labourers, and persons of a similar description." (Emphasis supplied.)

*South & N. Alabama R. Co. v. Falkner*, 1873, 49 *Ala.* 115, involved a judgment obtained against a president of a railroad. A judgment creditor sought to attach his salary. It was contended by this president that he could claim an exemption under the statute which provided that the "wages of laborers and employees shall not be subject to garnishment or attachment, * * *." In rejecting this claim, the Alabama Supreme Court ruled (at page 118):

"* * * The president of a railroad company cannot be said to be a laborer or employee, within the meaning of this law. The term 'wages' indicates inconsiderable pay, without excluding 'salary,'—which is suggestive of larger compensation for personal services. But its application to laborers and employees certainly conveys the idea of a subordinate occupation which is not very remunerative; one of not much independent responsibility, but rather subject to immediate supervision. * * *"

*South & N. Ala. R. R. Co. v. Falkner,* was followed in 1935 in *Smith v. City of Mobile,* 230 *Ala.* 584, 162 *So.* 361, where the Alabama Court considered and discussed the distinction between "wages" and "salary".

The clear intent of Title 10 *Del. C.* § 4901, is that all property "may be seized and sold upon judgment and execution obtained", unless made specifically exempt by statute, Title 10 *Del. C.* §§ 4902, 4903, 4913. See *Schwanger v. Feeney's,* 3 *Terry* (42 *Del.*) 198, 203, 29 *A.* 2d 369, 371; *Wooley on Delaware Practice,* § 1021, Page 705, §§ 1149-1167, compare §§ 1168-1181, particularly § 1181 at Page 809; see 10 *Del. C.* § 3503.

As observed above, there were many cases decided before and about 1873 which considered the meaning of the term "wages" and distinguished it from the term "salary". Such cases substantiate a holding that there was a then recognized distinction in meaning between these terms, and the failure of the General Assembly to include the word "salary" in the 1873 exemption statute, and the many amendments thereafter, requires that I deny defendant's motion to quash since the General Assembly limited the exemption to persons earning "wages" and I hold that "salaries" are not exempt from garnishment proceedings. For the reasons given defend-

ant's motion, based on the cited statute, to quash the attachment *fi. fa.* is denied.

Order on notice.