■ VINCENZA D'GUARDIA, on Behalf of Himself and All Other Residents and Patients of Sayville Nursing Home Similarly Situated, Respondent, v PETER PIFFATH et al., Respondents. (Matter No. 1.) SAYVILLE NURSING HOME et al., Respondents, v ROBERT P. WHALEN, as Commissioner of New York State Department of Health, et al., Respondents. (Matter No. 2.) LEON J. DAVIS, as President of District 1199 National Union of Hospital and Health Care Employees, Appellant, v PETER PIFFATH Doing Business as SAYVILLE NURSING HOME, et al., Respondents. (Matter No. 3.)—Leon J. Davis as President of the District 1199 of the National Union of Hospital and Health Care Employees RWDSU, AFL-CIO, appeals from an order and judgment (one paper) of the Supreme Court, Suffolk County (Jones, J.), dated November 9, 1989, which, upon a motion by the Commissioner of the New York State Department of Health, *inter alia,* to finally settle his account as

receiver of the nursing home, which was the subject of a reference to a Referee to hear and report, and upon a motion made by the non-party, Guardian ad Litem for the plaintiff in Matter No. 1 to confirm the second report of the Referee, directed, in effect, that the funds remaining in the receivership account be distributed on a pro rata basis in order to satisfy the claims against the receiver made by the union, the landlord of the nursing home, the guardian, and the Referee himself.

Ordered that the order and judgment is affirmed, with costs.

Over 10 years ago, the Commissioner of the New York State Department of Health sought to settle his account as the receiver for the Sayville Nursing Home. He had been appointed receiver on April 18, 1977. The nursing home was physically closed in July 1977. The receiver's motion to settle his account has been pending since 1980, primarily because of the inordinate difficulties encountered by the parties and by the court in resolving a dispute between the landlord, the union, and the owner of the nursing home over how to distribute the remaining receivership assets.

In 1980, after the receiver had made his initial motion to settle his account, the union moved to confirm an arbitration award which had recently been granted in favor of the union and against Peter Piffath (in his status as operator of the nursing home prior to April 18, 1977) and against the receiver (in his status as operator of the nursing home beginning on April 18, 1977). Abraham Shames, as the landlord of the nursing home operated first by Piffath, and later by the receiver, was obviously not a party to the collective bargaining agreement, or to the actual arbitration, or to the proceeding to confirm the arbitration award.

On June 23, 1981, the Supreme Court, Suffolk County (DeLuca, J.), granted judgment in favor of the union and against the receiver, *inter alia,* confirming the award, and awarding the union the principal sum of $19,968.61. The terms of that judgment indicate that the only papers considered by Justice DeLuca were those submitted by the union, Mr. Piffath, and the receiver. This is so, even though, at the time that this judgment was made, the court still had before it the receiver's motion to settle his account, as well as an application by the landlord to compel the receiver to account for rent.

Neither the receiver's motion to settle his account nor the landlord's motion for an order directing payment of rent had

been decided at the time that the June 1981 judgment in favor of the union was entered. Those motions had been referred by Justice DeLuca for a hearing, which eventually began on June 14, 1982. Following the hearing, a judgment was entered in favor of the landlord in the sum of $42,214, representing the rent owed to the landlord by the receiver. In neither of the two foregoing judgments did the court actually settle the receiver's account.

The assets held by the receiver proved to be insufficient to satisfy both the judgment in favor of the landlord for $42,214 and the judgment in favor of the union for $19,968.61. In 1984 the receiver's continued failure to satisfy either judgment led to further litigation. Among the motions made by various parties at this point was yet another application, made by the receiver on May 22, 1984, for an order "setting forth the order of priority to the moneys expected to be generated [for the receivership]".

By order dated August 13, 1984, the Supreme Court (Underwood, J.) appointed a Referee "to hear and determine the priority of claims [against the receivership]". Despite the language of the court's order and its decision, the reference was clearly treated as one to hear and report. After the Referee had concluded that the union's claim was "last in priority", being a claim for "fringe benefits" only, the Supreme Court (Underwood, J.) denied a subsequent motion to confirm the Referee's report and directed yet another reference in an order dated May 8, 1987.

In his second report, which is not dated, the Referee found that the union's claim should be given first priority, rather than last. A Guardian ad Litem for the petitioner in the original proceeding against the operator of the nursing home, whose claim was also given a preference, made a motion to confirm this second report on August 1, 1989. By order and judgment (one paper), dated November 9, 1989, the Supreme Court (Jones, J.), modifying the conclusions reached by the Referee, held that no claim was entitled to absolute priority, and that the various claims should be satisfied on a pro rata basis from the funds remaining in the receiver's account. Thus, in the order and judgment appealed from, Justice Jones finally settled the account of the receiver. Only the union has appealed.

The union makes essentially two arguments. Citing Business Corporation Law § 1210, Not-for-Profit Corporation Law § 1210, and Partnership Law § 71-a, the union argues that its

claim is entitled to priority against all others. However, unlike the statutes relied upon by the union, the statutes which could actually be said to have any relevance to this case (Public Health Law § 2810; Social Services Law § 461-f) grant no such priority, and in fact unequivocally mandate that the receiver of an adult care facility "shall honor all existing leases" (Public Health Law § 2810 [2] [c]; Social Services Law § 461-f [3] [c]). Moreover, the Court of Appeals has held that statutes such as those relied upon by the union which give preference to claims for wages in the context of receivership proceedings, should be narrowly construed so as to apply neither to claims for benefits nor to claims for salary (*Matter of Stryker*, 158 NY 526; *Williams v AGK Communications*, 143 Misc 2d 845; *see also, Broward Bldrs. Exch. v Goehring*, 231 So 2d 513 [Fla]; *Norman v Goldman*, 54 Del 45, 173 A2d 607; *In re Riebs Estate*, 8 Wis 2d 110, 98 NW2d 453; *State v Ash*, 53 Ariz 197, 87 P2d 270; *Speilberger Bros. v Brandes*, 3 Ala App 590, 58 So 75; *Massie v Cessna*, 239 Ill 352, 88 NE 152; *Blick v Mercantile Trust & Deposit Co.*, 113 Md 487, 77 A 844). On appeal, the union does not take issue with the finding made by the Referee in his first report, which was to the effect that the claim reflected in the arbitration award and in the money judgment for $19,968.61 was for fringe benefits.

Second, the union relies on the doctrine of the law of the case, and points out that the judgment dated June 23, 1981, states that the union's claim for $19,968.61 should be given first priority. One flaw in this argument is that the party over whose claim the union now seeks a preference, i.e., Mr. Shames, the landlord, was not a party to the union's agreement to arbitrate or to the arbitration or to the proceeding to confirm the arbitration award, and hence is not impeded from seeking relitigation of matters decided therein (*see, Guido v New York Tel. Co.*, 145 AD2d 203). The fact that Mr. Shames, in his status as a participant in other aspects of this litigation, may have had actual notice of the pendency of the union's actual motion to confirm the arbitration award does not, without more, make him a proper party to that motion. Similarly, the fact that Mr. Shames had his own motion pending before the same court (DeLuca, J.) at the time that the union's motion was decided does not, as demonstrated by the actual terms of the judgment dated June 23, 1981, mean that those papers were actually considered by the court in making that judgment.

More fundamentally, this court is not bound by prior unappealed orders of the Supreme Court and may thus "affirm an

order which is substantively correct * * * even though by doing so the effect of a prior unappealed order is possibly undermined" *(Post v Post,* 141 AD2d 518; *see also, Richter v Richter,* 156 AD2d 653; *Zappolo v Putnam Hosp. Center,* 117 AD2d 597). For the reasons outlined above, we conclude that any determination granting superiority to the union's claims over all other equally valid claims would be incorrect, and we are not bound by the doctrine of the law of the case to affirm such an incorrect determination.

The union makes no other arguments and the arguments made in the brief filed by the Guardian ad Litem may not serve as a basis for granting relief to her because she has not appealed. The order and judgment appealed from is, therefore, affirmed. Bracken, J. P., Harwood, Lawrence and O'Brien, JJ., concur.